## AMERICAN SCHOOL OF MAGNETIC HEALING *v.* McANNULTY.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

No. 27. Argued October 15, 19, 1902.—Decided November 17, 1902.

On demurrer all the material facts averred in a bill of complaint are admitted. including averments describing complainant's business and stating that it is founded "almost exclusively on the physical and practical proposition that the mind of the human race is largely responsible for its ills, and is a perceptible factor in the healing, curing, benefiting and remedying thereof, and that the human race does possess the innate power through proper exercise of the faculty of the brain and mind, to largely control and remedy the ills that humanity is heir to, and they (complainants) discard and eliminate from their treatment what is commonly known as Christian Science, and they are confined to practical scientific treatment emanating from the source aforesaid." The foregoing allegations are not conclusions of law but statements of fact.

Such an allegation having been made in a bill of complaint the business referred to cannot on demurrer be properly pronounced such a fraud within the statutes of the United States as will justify a postmaster withholding matter sent to complainants through the mail in answer to advertisements on an order issued by the Postmaster General under sections 3929 and 4041 of the Revised Statutes of the United States, and section 4 of an act approved March 2, 1875, 28 Stat. 963, 964; but in overruling the demurrer, this court does not mean to preclude the defendant from showing on the trial, if he can, that the business of the complainants, as in fact conducted, amounts to a violation of such statutes.

The statutes referred to were not intended to cover any case which the Postmaster General might regard as based on false opinions, but only cases of actual fraud, in fact, in regard to which opinions formed no basis.

Conceding for the purposes of this case that Congress has full and absolute

jurisdiction over the mails, still where the Postmaster General, in a case not covered by the acts of Congress, has assumed to act under the authority granted by the said statutes and made an order withholding mail and interfering with carrying on the business above described, even if such order be made after a hearing, the matter is subject to be reviewed by the courts; and while the conduct of the post office is a part of the administrative department of the Government, that fact does not always oust the courts of jurisdiction to grant relief to a party aggrieved by any action, by the head, or one of the subordinate officials of that department, which is unauthorized by the statute under which he assumes to act.

Where the action of such an officer is unauthorized he thereby violates the property rights of the person whose letters are withheld.

In this case it not appearing that the complainants have violated any law they have the legal right under the general acts of Congress relating to the mails to have their letters delivered at the post office as directed, and as those letters contain checks, drafts, money orders and money itself, all of which became their property as soon as deposited in the various post offices for transmission by mail, if the same are not delivered to them they will sustain irreparable injury, and there being no adequate remedy at law, they are entitled to equitable relief and an injunction preventing the local postmaster withholding their mail under the order so issued by the Postmaster General.

THIS is an appeal under section 5 of the Circuit Court of Appeals act of 1891, to review directly the decree of the Circuit Court of the United States for the Western District of Missouri, dismissing the bill of complainants (appellants) on the merits. The bill, as amended by leave of the court, averred in substance that the complainants are, the one a business corporation incorporated under the laws of and doing business in the State of Missouri, and the other a resident and citizen of the State of Missouri; that the defendant was at the time of the filing of the bill and at the times therein stated postmaster in charge of the United States post office in the city of Nevada, State of Missouri, and a resident and a citizen of that State; that as such postmaster he has the exclusive management of the post office in the city of Nevada, and of the receipt and distribution of mail received at that city through the United States mails.

It was further averred that The American School of Magnetic Healing is located and has its chief office and place of business at the city of Nevada, and the complainant Kelly was at the time of the filing of the bill and at all the dates and times

mentioned therein secretary, treasurer and general manager of the corporation. In November, 1897, he located at Nevada and engaged in the business of healing diseases and ailments of the human family and the business of teaching the science of healing of human ills, and that in April, 1898, he procured the incorporation of the business under the laws of the State of Missouri, under the name of The American School of Magnetic Healing, and among the stockholders of the company the complainant Kelly was one; that large buildings were erected for such business and large amounts expended in advertising the same. The bill further averred as follows:

"That in and about their business they carried on and conducted, not only the treating of people afflicted with ills at their establishment at said city, but also engaged in the business of teaching and educating others in the practical science of healing, and that a large amount of their business consists of treatment by letter and advice to people throughout the United States and foreign countries, and in the treatment under said circumstances they have built up a large and extensive business in the way of receipts of such treatment received through the United States mail, by letter, registered package and otherwise, in the nature of checks, drafts and United States moneys; that said business has grown to such an extent that, immediately and for a long time prior, to the grievances hereinafter complained of the receipts through the United States mails, in the manner aforesaid, for the treatment of persons throughout the United States and foreign countries, have reached and averaged about from one thousand dollars to sixteen hundred dollars per day.

"And your orators state that said business is a legal and legitimate business, conducted according to business and legal methods, and is founded largely and almost exclusively on the physical and practical proposition that the mind of the human race is largely responsible for its ills, and is a perceptible factor in the treating, curing, benefiting and remedying thereof.

"And that the human race does possess the innate power, through proper exercise of the faculty of the brain and mind, to largely control and remedy the ills that humanity is heir to,

and complainants discard and eliminate from their treatment what is commonly known as divine healing and Christian science, and complainants are confined to practical scientific treatment emanating from the source aforesaid.

"That for a long time previous, and prior to, the grievances hereinafter mentioned, said corporation has been sending out a large amount of advertising matter through the United States post office at said city of Nevada, and that all of its receipts, by checks, drafts or money orders aforesaid, have been received by and delivered to them through the United States post office at the city of Nevada, of which the respondent herein has exclusive charge as postmaster aforesaid, and had, during the time aforesaid, been receiving a large number of letters addressed to said institution and to its office, regarding its treatment and manner of treatment, and business letters pertaining to, and inquiring into, the manner of treatment.

"That all such mail, letters and communications are generally addressed and directed to the American School of Magnetic Healing at said city, and that in many cases said letters are and may be addressed to said J. H. Kelly, secretary or treasurer or manager, or to J. H. Kelly, individually, or to Prof. J. H. Kelly, or to J. H. Kelly or Prof. J. H. Kelly, secretary, treasurer or manager of the American School of Magnetic Healing.

"That said Kelly is also receiving and for a long time past has been receiving letters addressed to him individually upon social matters from friends and acquaintances and concerning business not pertaining to or connected with the business hereinafter stated.

"That prior to the grievances hereinafter mentioned said institute was receiving in the way of letters addressed to it or to its officers in the manner aforesaid an average of about the sum of 3000 letters per day, and ever since the happening of the grievances hereinafter mentioned there have been accumulating in said post office letters belonging to your orator, addressed in the manner before stated, probably to the total number of 25,000 letters.

"That all of said letters, as your orators are informed and believe, are duly stamped and ready for delivery to them but

OCTOBER TERM, 1902.

for the action of the postmaster and postal department herein-after mentioned."

It was then averred that persons who were prompted by as-sumed competitive interference with their business complained to the United States Post Office Department at Washington that complainants were not engaged in legitimate business, and therefore, on May 15, 1890, the Post Office Department made the following order:

"POST OFFICE DEPARTMENT,

"WASHINGTON, D. C., May 15, 1900.

"It having been made to appear to the Postmaster General, upon evidence satisfactory to him, that the American School of Magnetic Healing, S. A. Weltmer, president; J. H. Kelly, sec-retary, and J. H. Kelly, at Nevada, Missouri, are engaged in conducting a scheme or device for obtaining money through the mails by means of false and fraudulent pretenses, represen-tations and promises, in violation of the act of Congress entitled 'An act to amend certain sections of the Revised Statutes re-lating to lotteries, and for other purposes approved Septem-ber 19, 1900.'

"Now, therefore, by authority vested in him by said act and by the act of Congress entitled 'An act for the suppression of lottery traffic through international and interstate commerce and the postal service, subject to the jurisdiction and laws of the United States, approved March 2, 1895,' the Postmaster General hereby forbids you to pay any postal money order drawn to the order of said concern and persons, and you are hereby directed to inform the remitter of any such postal money order that payment thereof has been forbidden, and that the amount thereof will be returned upon the presentation of a du-plicate money order applied for and obtained under the regula-tions of the department.

"And you are hereby instructed to return all letters, whether registered or not, and other mail matter which shall arrive at your office directed to the said concern and persons, to the post-masters at the offices at which they were originally mailed, to be delivered to the senders thereof, with the word 'fraudulent' plainly written or stamped upon the outside of such letters or

matter. Provided, however, that where there is nothing to indicate who are the senders of letters not registered or other matter you are directed in that case to send such letters and matter to the dead letter office, with the word 'fraudulent' plainly written or stamped thereon, to be disposed of as other dead matter, under the laws and regulations applicable thereto.

" CH. EMORY SMITH,
" *Postmaster General.*

" To the Postmaster, Nevada, Missouri."

Since such order the defendant has refused to deliver any mail whatever to the complainants, and there had, when the bill was filed, as complainants aver on information and belief, accumulated at the post office at Nevada letters addressed to them containing checks, drafts, money orders or money to an aggregate of at least $10,000 in value; that these checks, drafts, etc., came from various customers and clients throughout the United States and foreign countries, who had all been treated and for whom the complainants had performed services under contracts with such parties, and that the sums were so sent in the respective letters in payment for services performed and rendered to the senders respectively, all of the senders being willing and at all times having been willing that their letters containing the remittances should be turned over to the complainants, they making no objection or complaint thereto.

The complainants further averred that they had been informed by the defendant that on Monday, the 28th day of May, then coming, he intended to stamp on each and every one of the letters addressed to the complainants, under any of the designations theretofore mentioned in the bill, the word "fraudulent" across the face of each letter, without opening it and without knowing what such letter contained or the nature or character of the contents, and that the defendant would then return the letter to the sender thereof in all cases where from the outside of the letter or envelope he was able to determine from whom the same was received, and as to all other letters addressed to the complainants, where he was unable to

determine from the outside from whom the letters were sent, the defendant would stamp with the word "fraudulent" and send to the dead letter office of the United States Post Office Department all such letters, and the defendant stated that he would refuse to deliver any further mail or letters to the complainants or either of them that might be received at his said post office addressed to them or either of them.

Complainants then averred that if the respondent were permitted to do these things and to return the letters, and refused in the future to deliver or allow complainants to receive any letters or mail matter at the post office at Nevada, it would work irreparable injury, loss and damage to the complainants, and would result in eventually embarrassing, crippling, breaking up and destroying complainants' legitimate business, and that the complainants had no other legal or adequate remedy by which they could prevent the committing of the acts and grievances complained of than by writ of injunction.

The bill then averred that the action of the defendant was based upon the order of the Postmaster General, above set forth, who assumed to act under sections 3929 and 4041 of the Revised Statutes of the United States, and section 4 of an act approved March 2, 1895. 28 Stat. 963, 964.

Section 3929 of the Revised Statutes is set forth in the margin.[1]

Section 4041 is of the same purport as section 3929, except-

---

[1] SEC. 3929. The Postmaster General may, upon evidence satisfactory to him that any person is engaged in conducting any fraudulent lottery, gift-enterprise, or scheme for the distribution of money or of any real or personal property, by lot, chance, or drawing of any kind, or in conducting any other scheme or device for obtaining money through the mails by means of false or fraudulent pretenses, representations, or promises, instruct postmasters at any post offices at which registered letters arrive directed to any such person, to return all such registered letters to the postmasters at the offices at which they were originally mailed, with the word "fraudulent" plainly written or stamped upon the outside of such letters; and all such letters so returned to such postmasters shall be by them returned to the writers thereof, under such regulations as the Postmaster General may prescribe. But nothing contained in this title shall be so construed as to authorize any postmaster or other person to open any letter not addressed to himself.

ing that instead of providing for the retention of registered letters, it forbids the payment by any postmaster to the person or company described of any postal money orders drawn to his or its order or to his or its favor or to any agent of any such person or company, and it provides for the return to the remitters of the sums of money named in those money orders. Section 4 of the act (chap. 191, Laws of 1895, 28 Stat. *supra*) amended section 3929 of the Revised Statutes so as to provide for the retention of all letters instead of merely registered letters as in the original section.

Before the issuing of the written order by the Postmaster General prohibiting the delivery of mail matter to the complainants and pursuant to notice from the Postmaster General, the complainants went before that official at Washington and had a hearing before him, and gave their reasons why what is termed a "fraud order" should not be issued, and that the Postmaster General, after hearing evidence such as in his judgment was contemplated by the sections of the statutes above mentioned, issued the order above referred to, and thereupon the defendant has refused to permit the delivery of the mail, and assigns as his only reason for so doing that it would be in violation of the order of the Postmaster General founded upon the provisions of the statute already set forth.

The bill then averred that the statutes have no application whatever to the conduct or carrying on of complainants' business, which is a legitimate one, and that no fraud, deceit, deception or misrepresentation of any kind has ever been practised by them, and that their customers or clients do not claim or assert that the complainants have in any manner practised any fraud, deceit or misrepresentation at any time in procuring the business from them or in curing their ills or diseases. Complainants further averred that the provisions of the statutes above mentioned are in violation of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, in that they undertake to deprive persons of their property and property rights without due process of law, and if the statutes were enforced they would place in the power of the postmaster and the Post Office Department of the United States the sole

and exclusive right to pass upon the rights of the complainants, as between themselves and other parties with whom they deal and transact business through the mails, without a hearing, and that the provisions of the statute are void for the reason that they provide for no tribunal, court or authority to hear or determine any violation of the statute or claimed violation of the statutes, but place the same absolutely in the power and control of the postmasters and the Post Office Department, and that the statutes vest an arbitrary discretion in the postmasters and the Post Office Department or the Postmaster General to determine as he may see fit, whether right or wrong, the question as to who shall or who shall not have and receive mail from the United States Post Office Department, and who shall and who shall not use the United States mails, and vests in the department or the Postmaster General, if enforced, the power to interdict and absolutely prohibit the carrying on of all commercial and business transactions of the country done through the mailing system, if they see fit so to do, and make the postmasters and the Post Office Department the sole judges in their own case.

The complainants then asked for an injunction to restrain the postmaster from carrying out the order of the Postmaster General, and that a decree might be entered perpetually enjoining the defendant as prayed for.

The defendant demurred to the complainants' amended bill, (1) on the ground that the complainants had not stated any such case as entitled them to any relief; (2) because the complainants had not stated any ground for equitable relief against the defendant, and had not shown any reason why an injunction should be granted.

The court sustained the demurrer, and the complainants declining to plead futher, it was decreed by the court that the amended bill of the complainants was insufficient in law and equity, and it was thereupon dismissed at complainants' cost.

*Mr. James H. Harkless* for appellants. *Mr. John O'Grady* and *Mr. Charles S. Crysler* were with him on the brief.

*Mr. Solictor General Richards* and *Mr. Special Attorney Robert A. Howard* for appellee.

Mr. Justice Peckham, after making the foregoing statement of facts, delivered the opinion of the court.

The bill of the complainants as amended raises some grave questions of constitutional law which, in the view the court takes of the case, it is unnecessary to decide. We may assume, without deciding or expressing any opinion thereon, the constitutionality in all particulars of the statutes above referred to, and therefore the questions arising in the case will be limited, (1) to the inquiry as to whether the action of the Postmaster General under the circumstances set forth in the complainants' bill is justified by the statutes; and (2) if not, whether the complainants have any remedy in the courts.

First. As the case arises on demurrer, all material facts averred in the bill are of course admitted. It is, therefore, admitted that the business of the complainants is founded "almost exclusively on the physical and practical proposition that the mind of the human race is largely responsible for its ills, and is a perceptible factor in the treating, curing, benefiting and remedying thereof, and that the human race does possess the innate power, through proper exercise of the faculty of the brain and mind, to largely control and remedy the ills that humanity is heir to, and (complainants) discard and eliminate from their treatment what is commonly known as divine healing and Christian science, and they are confined to practical scientific treatment emanating from the source aforesaid."

These allegations are not conclusions of law, but are statements of fact upon which, as averred, the business of the complainants is based, and the question is whether the complainants who are conducting the business upon the basis stated thereby obtain money and property through the mails by means of false or fraudulent pretenses, representations or promises. Can such a business be properly pronounced a fraud within the statutes of the United States?

There can be no doubt that the influence of the mind upon

the physical condition of the body is very powerful, and that a hopeful mental state goes far in many cases, not only to alleviate, but even to aid very largely in the cure of an illness from which the body may suffer. And it is said that nature may itself, frequently if not generally, heal the ills of the body without recourse to medicine, and that it cannot be doubted that in numerous cases nature when left to itself does succeed in curing many bodily ills. How far these claims are borne out by actual experience may be matter of opinion. Just exactly to what extent the mental condition affects the body, no one can accurately and definitely say. One person may believe it of far greater efficacy than another, but surely it cannot be said that it is a fraud for one person to contend that the mind has an effect upon the body and its physical condition greater than even a vast majority of intelligent people might be willing to admit or believe. Even intelligent people may and indeed do differ among themselves as to the extent of this mental effect. Because the complainants might or did claim to be able to effect cures by reason of working upon and affecting the mental powers of the individual, and directing them towards the accomplishment of a cure of the disease under which he might be suffering, who can say that it is a fraud or a false pretense or promise within the meaning of these statutes? How can any one lay down the limit and say beyond that there are fraud and false pretenses? The claim of the ability to cure may be vastly greater than most men would be ready to admit, and yet those who might deny the existence or virtue of the remedy would only differ in opinion from those who assert it. There is no exact standard of absolute truth by which to prove the assertion false and a fraud. We mean by that to say that the claim of complainants cannot be the subject of proof as of an ordinary fact; it cannot be proved as a fact to be a fraud or false pretense or promise, nor can it properly be said that those who assume to heal bodily ills or infirmities by a resort to this method of cure are guilty of obtaining money under false pretenses, such as are intended in the statutes, which evidently do not assume to deal with mere matters of opinion upon subjects which are not capable of proof as to their falsity. We may not

believe in the efficacy of the treatment to the extent claimed by complainants, and we may have no sympathy with them in such claims, and yet their effectiveness is but matter of opinion in any court. The bill in this case avers that those who have business with complainants are satisfied with their method of treatment and are entirely willing that the money they sent should be delivered to the complainants. In other words, they seem to have faith in the efficacy of the complainants' treatment and in their ability to heal as claimed by them. If they fail, the answer might be that all human means of treatment are also liable to fail, and will necessarily fail when the appointed time arrives. There is no claim that the treatment by the complainants will always succeed.

Suppose a person should assert that, by the use of electricity alone, he could treat diseases as efficaciously and successfully as the same have heretofore been treated by " regular " physicians. Would these statutes justify the Postmaster General, upon evidence satisfactory to him, to adjudge such claim to be without foundation and then to pronounce the person so claiming, to be guilty of procuring, by false or fraudulent pretenses, the moneys of people sending him money through the mails, and then to prohibit the delivery of any letters to him ? The moderate application of electricity, it is strongly maintained, has great effect upon the human system, and just how far it may cure or mitigate diseases no one can tell with certainty. It is still in an empirical stage, and enthusiastic believers in it may regard it as entitled to a very high position in therapeutics, while many others may think it absolutely without value or potency in the cure of disease. Was this kind of question intended to be submitted for decision to a Postmaster General, and was it intended that he might decide the claim to be a fraud and enjoin the delivery of letters through the mail addressed to the person practising such treatment of disease ? As the effectiveness of almost any particular method of treatment of disease is, to a more or less extent, a fruitful source of difference of opinion, even though the great majority may be of one way of thinking, the efficacy of any special method is certainly not a matter for the decision of the Postmaster General within these statutes relative to fraud.

Unless the question may be reduced to one of fact as distinguished from mere opinion, we think these statutes cannot be invoked for the purpose of stopping the delivery of mail matter.

Vaccination is believed by many to be a preventive of smallpox, while others regard it as unavailing for that purpose. Under these statutes could the Postmaster General, upon evidence satisfactory to him, decide that it was not a preventive, and exclude from the mails all letters to one who practised it and advertised it as a method of prevention, on the ground that the moneys he received through the mails were procured by false pretenses?

Again, there are many persons who do not believe in the homeopathic school of medicine, and who think that such doctrine, if practised precisely upon the lines set forth by its originator, is absolutely inefficacious in the treatment of diseases. Are homeopathic physicians subject to be proceeded against under these statutes and liable at the discretion of the Postmaster General, upon evidence satisfactory to him, to be found guilty of obtaining money under false pretenses and their letters stamped as fraudulent and the money contained therein as payment for their professional services sent back to the writers of the letters? And, turning the question around, can physicians of what is called the "old school" be thus proceeded against? Both of these different schools of medicine have their followers, and many who believe in the one will pronounce the other wholly devoid of merit. But there is no precise standard by which to measure the claims of either, for people do recover who are treated according to the one or the other school. And so, it is said, do people recover who are treated under this mental theory. By reason of it? That cannot be averred as matter of fact. Many think they do. Others are of the contrary opinion. Is the Postmaster General to decide the question under these statutes?

Other instances might be adduced to illustrate the proposition that these statutes were not intended to cover any case of what the Postmaster General might think to be false opinions, but only cases of actual fraud in fact, in regard to which opinion formed no basis.

It may perhaps be urged that the instances above cited by way of illustration do not fairly represent the case now before us, but the difference is one of degree only. It is a question of opinion in all the cases, and although we may think the opinion may be better founded and based upon a more intelligent and a longer experience in some cases than in others, yet after all it is in each case opinion only, and not existing facts with which these cases deal. There are, as the bill herein shows, many believers in the truth of the claims set forth by complainants, and it is not possible to determine as a fact that those claims are so far unfounded as to justify a determination that those who maintain them and practice upon that basis obtain their money by false pretenses within the meaning of these statutes. The opinions entertained cannot, like allegations of fact, be proved to be false, and therefore it cannot be proved as matter of fact that those who maintain them obtain their money by false pretenses or promises, as that phrase is generally understood, and, as in our opinion, it is used in these statutes.

That the complainants had a hearing before the Postmaster General, and that his decision was made after such hearing, cannot affect the case. The allegation in the bill as to the nature of the claim of complainants and upon what it is founded, is admitted by the demurrer, and we therefore have undisputed and admitted facts, which show upon what basis the treatment by complainants rests, and what is the nature and character of their business. From these admitted facts it is obvious that complainants in conducting their business, so far as this record shows, do not violate the laws of Congress. The statutes do not as matter of law cover the facts herein.

Second. Conceding for the purpose of this case, that Congress has full and absolute jurisdiction over the mails, and that it may provide who may and who may not use them, and that its action is not subject to review by the courts, and also conceding the conclusive character of the determination by the Postmaster General of any material and relevant questions of fact arising in the administration of the statutes of Congress relating to his department, the question still remains as to the power of the court to grant relief where the Postmaster General has assumed

and exercised jurisdiction in a case not covered by the statutes, and where he has ordered the detention of mail matter when the statutes have not granted him power so to order.    Has Congress entrusted the administration of these statutes wholly to the discretion of the Postmaster General, and to such an extent that his determination is conclusive upon all questions arising under those statutes, even though the evidence which is adduced before him is wholly uncontradicted, and shows beyond any room for dispute or doubt that the case in any view is beyond the statutes, and not covered or provided for by them?

That the conduct of the Post Office is a part of the administrative department of the government is entirely true, but that does not necessarily and always oust the courts of jurisdiction to grant relief to a party aggrieved by any action by the head or one of the subordinate officials of that department which is unauthorized by the statute under which he assumes to act.    The acts of all its officers must be justified by some law, and in case an official violates the law to the injury of an individual the courts generally have jurisdiction to grant relief.

The Land Department of the United States is administrative in its character, and it has been frequently held by this court that, in the administration of the public land system of the United States, questions of fact are for the consideration and judgment of the Land Department, and its judgment thereon is final.  *Burfenning* v. *Chicago &c., Railway Company,* 163 U. S. 321; *Johnson* v. *Drew,* 171 U. S. 93, 99; *Gardner* v. *Bonestell,* 180 U. S. 362.

While the analogy between the above cited cases and the one now before us is not perfect, yet even in them it is held that the decisions of the officers of the department upon questions of law do not conclude the courts, and they have power to grant relief to an individual aggrieved by an erroneous decision of a legal question by department officers.

Thus in the *Burfenning* case, *supra,* a tract of land had been reserved from homestead and preëmption, and had been included within the limits of an incorporated town, notwithstanding which the Land Department had decided that the land was open to entry and had granted a patent under the statute

relating to homesteads. The court said that "When by act of Congress a tract of land has been reserved from homestead and preëmption, or dedicated to any special purpose, proceedings in the Land Department in defiance of such reservation or dedication, although culminating in a patent, transfer no title, and may be challenged in an action at law. In other words, the action of the Land Department cannot override the expressed will of Congress, or convey away public lands in disregard or defiance thereof."

Here it is contended that the Postmaster General has, in a case not covered by the acts of Congress, excluded from the mails letters addressed to the complainants. His right to exclude letters, or to refuse to permit their delivery to persons ad-dressed, must depend upon some law of Congress, and if no such law exist, then he cannot exclude or refuse to deliver them. Conceding, *arguendo*, that when a question of fact arises, which, if found in one way, would show a violation of the statutes in question in some particular, the decision of the Postmaster General that such violation had occurred, based upon some evidence to that effect, would be conclusive and final, and not the subject of review by any court, yet to that assumption must be added the statement that if the evidence before the Postmaster General, in any view of the facts, failed to show a violation of any Federal law, the determination of that official that such violation existed would not be the determination of a question of fact, but a pure mistake of law on his part, because the facts being conceded, whether they amounted to a violation of the statutes, would be a legal question and not a question of fact. Being a question of law simply, and the case stated in the bill being outside of the statutes, the result is that the Postmaster General has ordered the retention of letters directed to complainants in a case not authorized by those statutes. To authorize the interference of the Postmaster General, the facts stated must in some aspect be sufficient to permit him under the statutes to make the order.

The facts, which are here admitted of record, show that the case is not one which by any construction of those facts is covered or provided for by the statutes under which the Postmaster

General has assumed to act, and his determination that those admitted facts do authorize his action is a clear mistake of law as applied to the admitted facts, and the courts, therefore, must have power in a.proper proceeding to grant relief.   Otherwise, the individual is left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law and is in violation of the rights of the individual.   Where the action of such an officer is thus unauthorized he thereby violates the property rights of the person whose letters are withheld.

In our view of these statutes the complainants had the legal right under the general acts of Congress relating to the mails to have their letters delivered at the post office as directed. They had violated no law which Congress had passed, and their letters contained checks, drafts, money orders and money itself, all of which were their property as soon as they were deposited in the various post offices for transmission by mail. They allege, and it is not difficult to see that the allegation is true, that, if such action be persisted in, these complainants will be entirely cut off from all mail facilities, and their business will necessarily be greatly injured if not wholly destroyed, such business being, so far as the laws of Congress are concerned, legitimate and lawful.   In other words, irreparable injury will be done to these complainants by the mistaken act of the Postmaster General in directing the defendant to retain and refuse to deliver letters addressed to them.   The Postmaster General's order being the result of a mistaken view of the law could not operate as a defence to this action on the part of the defendant, though it might justify his obedience thereto until some action of the court.   In such a case, as the one before us, there is no adequate remedy at law, the injunction to prohibit the further withholding of the mail from complainants being the only remedy at all adequate to the full relief to which the complainants are entitled.   Although the Postmaster General had jurisdiction over the subject-matter (assuming the validity of the acts) and therefore it was his duty upon complaint being made to decide the question of law whether the case stated was

within the statute, yet such decision being a legal error does not bind the courts.

Without deciding, therefore, or expressing any opinion upon the various constitutional objections set out in the bill of complainants, but simply holding that the admitted facts show no violation of the statutes cited above, but an erroneous order given by the Postmaster General to defendant, which the courts have the power to grant relief against, we are constrained to reverse the judgment of the Circuit Court, with instructions to overrule the defendant's demurrer to the amended bill, with leave to answer, and to grant a temporary injunction as applied for by complainants, and to take such further proceedings as may be proper and not inconsistent with this opinion. In overruling the demurrer we do not mean to preclude the defendant from showing on the trial, if he can, that the business of complainants as in fact conducted amounts to a violation of the statutes as herein construed.

*Judgment reversed.*

MR. JUSTICE WHITE and MR. JUSTICE MCKENNA, believing the judgment should be affirmed, dissented from the foregoing opinion.