UNITED STATES *ex rel.* RIVERSIDE OIL COMPANY *v.* HITCHCOCK.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 632. Argued March 17, 18, 1903.—Decided May 18, 1903.

Congress has constituted the Land Department, under the supervision and control of the Secretary of the Interior, a special tribunal with judicial functions to which is confided the execution of the laws which regulate the purchase, selling and care and disposition of the public lands; and neither an injunction nor mandamus will lie against an officer of the Land Department to control him in discharging an official duty which requires the exercise of his judgment and discretion.

The Secretary having jurisdiction to decide at all, has necessarily juris-
diction to decide as he thinks the law is, and it is his duty so to do, and the
courts have no power under those circumstances to review his determi-
nation by mandamus or injunction.   The courts have no general supervis-
ory power over the officers of the Land Department by which they can
control the decisions of such officers upon questions within their juris-
diction.

THE relator, plaintiff in error, filed its petition in the Supreme
Court of the District of Columbia, asking for a writ of man-
damus to compel the defendant, the Secretary of the Interior,
to vacate a certain order made by him rejecting selections of
land by one Clarke, and to compel the defendant to order such
selections passed to patent and to cause to be prepared and pre-
sented for signature to the proper officers of the United States of
America a patent for the selected land, or for such other relief
as might be proper.   The court denied the petition, and from
that judgment the relator appealed to the Court of Appeals of
the District, which, after a hearing, affirmed the judgment of
the court below.   The relator has brought the case here by
writ of error.

The petition for the writ filed in the court below, in addition
to various conclusions of law, made the following averments
of fact :

On October 28, 1898, one C. W. Clarke was the owner in fee
of certain land in the State of Oregon covered by a patent from
the United States to his grantors, which is described in the
petition, and the land was situated in a forest reservation in
that State, designated as the Cascade Range Forest Reserva-
tion.   On the day above mentioned Clarke executed a deed,
which conveyed in fee and relinquished to the United States the
land above described, and the deed was surrendered to the
register and receiver of the proper land office and received and
accepted by them.   Certain land was thereupon selected by
Clarke, which land had been duly surveyed and classified as
agricultural land prior to the selection, and appeared on the
records of the Land Department as agricultural land, subject
to disposition under the act of June 4, 1897, relating to forest
reserve lands.   A copy of the material portion of that act is set

forth in the margin in the case immediately preceding, *Cosmos &c. Co.* v. *Gray Eagle Co.*, *ante*, p. 301.

After the selection of the land the register certified that the land thus selected in lieu of the land relinquished to the United States was free from conflict, and that there was no adverse filing, entry or claim thereto, and he thereupon entered the selected land upon the records and tract books of the land office. The Land Department thereafter required Clarke (without authority of law as averred) to publish a notice of his selection for a period of sixty days, and the register forwarded all the papers to the Commissioner of the General Land Office, together with his above-mentioned certificate, and reported to that office that publication had been ordered pursuant to the circular of the General Land Office of December 18, 1899. Clarke complied with the requirements of the department and published the notice, and on February 6, 1900, before the sixty days had expired, the Kern Oil Company filed in the local office a protest against the selection, with accompanying affidavits, which protest and affidavits were also thereupon forwarded to the General Land Office. The petitioner avers that the protest was insufficient to constitute an issue as to whether or not the land selected by Clarke was vacant land open to settlement at the time of such selection, and it was averred that the protestant, by reason of the non-discovery of mineral in the land, was wholly without standing as an adverse claimant under the law and practice of the Land Department.

On January 2, 1900, Clarke duly conveyed by deed the selected land to the petitioner, and it thereby became vested with all of Clarke's rights in and to the land, and it is still the owner thereof and entitled to demand and receive from the United States a patent therefor. The petitioner then filed in the General Land Office a motion to dismiss the protest.

It was then averred that at the time of the selection by Clarke no other person had any right, title or interest, vested or inchoate, in or to the land so selected, and that the persons mentioned in the protest and affidavits and alleged to have been upon the land as locators at or before the time of the selection by Clarke, and under whom the protestant asserted rights,

were pretended explorers for minerals who had made no discovery of minerals upon the land or any part thereof, but had merely staked off pretended mining claims for the purpose of deceiving others and discouraging and defeating them from acquiring title to such land under the land laws, and that such staking off initiated no lawful right, inchoate or vested, under such land laws.

The hearing was had before the Commissioner of the General Land Office, and a decision in the matter was given by him, by which he held that the title of the selector did not vest until approval by the Commissioner, and that the land in the selection was yet open to exploration under the mining laws, and if at the date of the decision the land is shown to be mineral it defeats the selection.

From this decision the petitioner appealed to the Secretary of the Interior, and assigned among other things that the Commissioner erred in not sustaining the motion to dismiss the protest and in not passing the land selected to patent, and that he also erred in ordering a hearing and in not holding that the showing of the tract books and land records at the date of the selection governed the character of the land for the purpose of the selection, and also in holding that a discovery of mineral upon the land selected subsequent to the selection and before approval by the Commissioner would defeat such selection; that the Commissioner also erred in calling upon the selector to demand a hearing and assume the burden of proof upon the question of the character of the land, and in directing that at such hearing, if demanded, the character of the land subsequent to the selection should be embraced in the issue.

On April 25, 1901, the defendant rendered a decision in the matter, wherein, as averred, he held that questions respecting the class and character of the selected land were to be determined by the conditions existing at the time when all requirements necessary to obtain title have been complied with by the selector; that the mere recital in one of the forms approved by the respondent, of an accompanying non-mineral and non-occupancy affidavit, constituted a regulation of the department requiring the filing of such affidavit as a condition precedent to

the vesting of selector's title; that such alleged regulation was binding upon selector's forest reserve lieu land; that the affidavits filed by the selector Clarke failed to allege non-occupancy, and therefore he had not complied with the requirements necessary to obtain title; that since the said selection by Clarke valuable deposits of mineral petroleum oil had been discovered, and that in view of the alleged admitted occupancy subsequent to the said selection and the subsequently discovered value of the land for mining purposes, it was apparent that the required proofs of the then non-mineral character and non-occupancy of the land could not then be supplied; that therefore the selections must be rejected.

The petition averred that the defendant vacated the order of the Commissioner directing a hearing, and arbitrarily, wrongfully and unlawfully attempted to reject the selections and destroy the vested rights of Clarke and his grantees.

The protest mentioned in nowise questioned the sufficiency in substance and form of the selection made by Clarke, nor was the point of the alleged insufficiency of the affidavit raised by the Commissioner of the General Land Office in his decision of December 18, 1900, and the United States has in nowise notified the selector of any defect in the exchange, and there is no issue in the record charging a failure to comply with the law.

The affidavits, though not essential to the validity of the contract of exchange tendered by Congress, and accepted and completed by the relinquishment and selection aforesaid, did in law and in fact allege the non-occupancy of the land as understood in the law and the practice of the Land Department, as they expressly negative all the elements of legal occupancy.

A motion for a review of the hearing was made and granted, and was thereafter had before the Assistant Attorney General of the United States for the Interior Department.

On April 12, 1902, the defendant rendered a decision, adhering to the ruling already given, ignoring the curative effect of supplemental affidavits of non-occupancy, and denied the motion for a review.

By this decision the Secretary of the Interior erroneously held and decided that the land selected was not "vacant land,"

though in truth and in fact unoccupied, and such vacancy and lack of occupancy was not shown by an affidavit of selector, made and filed at the time and as a part of the selection; that the defendant erroneously held and decided that, in order to be vacant land within the meaning of the act of 1897, the selected land must not only be free from the presence of any one on the land as a matter of fact, but must be shown to be free from such presence of any one on the land at the date of selection by an affidavit of selector. It was then alleged that in fact there was no person present on the selected land at the time of the selection; that the decision of the Secretary of the Interior on review turned solely on a question of law, and not on any question of fact or on any question of mixed law and fact, and that the only question of law involved is the meaning of the act of June 4, 1897, and the particular words therein, " vacant land open to settlement."

The defendant arbitrarily refused to pass the selection to patent, and has arbitrarily ordered the case of the selector dismissed from his docket solely because of the alleged absence from the record of selection of a non-occupancy affidavit, and not because of any ground or cause of objection to the selection set up in said protest.

In conclusion, the petitioner prays for a writ of mandamus to command the defendant " to forthwith recall and vacate his said order rejecting said selections of said Clarke, and if said selections have already been cancelled to vacate and recall said cancellation and reinstate the proceedings relating to the said selections, and thereupon to proceed therein as required by law, and to order said selections passed to patent, and cause to be prepared and presented for signature to and by the proper officer of the United States of America a patent or patents for the said selected lands, and that the petitioner may have such other or further relief as the premises warrant and to the court may seem meet."

To this petition the defendant made answer, admitting many averments in the petition, and setting up the facts as understood by the defendant, as follows: The defendant averred that Clarke did file his deed with the local land officers and assumed

to select other land under the act of June 4, 1897; that a form of application to select land under the act had been prescribed by the Commissioner of the General Land Office in April, 1898, and approved by the Secretary of the Interior, and was in force when the selection was made, and which form contained, among other things, the following clause :

. " There are also submitted certificates from the proper officers showing that the land relinquished or surrendered is free from incumbrance of any kind, also that all taxes thereon to the present time have been paid, and an affidavit showing the lands selected to be non-mineral in character and unoccupied."

It is then averred that the allegation showing the land selected to be non-mineral in character and unoccupied was an essential averment, for the reason that, unless the lands were non-mineral in character and unoccupied, the same were not vacant lands open to settlement within the intent and meaning of the act of 1897.

The regulation was not complied with and no evidence of non-occupancy was given, and the allegation contained in the proposed form as to the non-mineral character of the land, was not complied with, as it was stated by the selector in this case that his affidavit as to the character of the lands was made " upon the evidence found upon the surface of the ground, and that the affiant does not undertake to express any opinion as to what may be under the ground."

The answer then set up the facts as to the protest of the Kern Oil Company and the various hearings and decisions of the Commissioner and the Secretary, in substance as set forth in the petition.

The defendant then averred that by the laws of the United States the duty was imposed upon him to construe the acts governing the disposition of the public lands of the United States, and in pursuance of the duties so imposed upon him he was required to construe and apply the terms of the act of Congress of June 4, 1897, and that in the exercise of his judgment and discretion in that behalf he did construe the term, " vacant land open to settlement," as meaning to exclude land in the actual occupation of any person or persons under the local cus-

toms· or rules of miners which are by the statute incorporated into and have become part of the laws of the United States; that, in the exercise of his proper duty and function as Secretary of the Interior, the defendant decided that, by reason of the failure of Clarke to show in due and proper form that the lands were at the date of selection subject ·to selection as " vacant land open to settlement," the attempted selection thereof must be rejected, and it thereupon became and was unlawful for this respondent as such Secretary to order any patent or patents to the said lands to issue to the said Clarke as in the said petition prayed to be commanded.

To this answer the petitioner demurred on the ground that the same was insufficient and bad in form and substance. After the demurrer was overruled the petitioner elected to stand by it, and the court thereupon adjudged that the rule to show cause should be discharged, the prayer of petitioner denied and the petition itself dismissed.

*Mr. Jefferson Chandler* and *Mr. Shirley C. Ward* for plaintiff in error. *Mr. John M. Thurston, Mr. William C. Prentiss, Mr. M. A. Ballinger, Mr. T. C. Van Ness* and *Mr. Horace F. Clark* were on the brief.

*Mr. Special Assistant John S. Chapman* for defendant in error. *Mr. Assistant Attorney General Van Devanter* and *Mr. Assistant Attorney General Glassie* were on the brief.

Mr. Justice Peckham, after making the foregoing statement of facts, delivered the opinion of the court.

We have set out in the foregoing statement of facts, at very great length, a large portion of the contents of the petition and answer in this case. It has been done for the purpose of showing by the record itself the questions of law arising therefrom. Upon a perusal of the record it appears that those questions are not merely formal ones nor are they so plain as not to require the careful judgment of any tribunal to which they *v* be referred for decision. Their solution was properly submittuu

to the Land Department, which had full and complete juris-
diction over the matters arising under the act of June 4, 1897,
and it thereby became the duty of the officers of that depart-
ment to decide them. As is said in *Knight* v. *United States
Land Association*, 142 U. S. 161:

"The Secretary is the guardian of the people of the United
States over the public lands. The obligations of his oath of
office oblige him to see that the law is carried out, and that
none of the public domain is wasted or is disposed of to a party
not entitled to it. He represents the Government, which is a
party in interest in every case involving the surveying and dis-
posal of the public lands."

Congress has constituted the Land Department, under the
supervision and control of the Secretary of the Interior, a
special tribunal with judicial functions, to which is confided the
execution of the laws which regulate the purchase, selling and
care and disposition of the public lands.

Neither an injunction nor mandamus will lie against an of-
ficer of the Land Department to control him in discharging an
official duty which requires the exercise of his judgment and
discretion. *Marquez* v. *Frisbie*, 101 U. S. 473 ; *Gaines* v.
*Thompson*, 7 Wall. 347 ; *United States* v. *Black*, 128 U. S. 40 ;
*United States* v. *Windom*, 137 U. S. 636.

In *Decatur* v. *Paulding*, 14 Pet. 497, it was held that, in
general, the official duties of the head of one of the executive
departments, whether imposed by act of Congress or by reso-
lution, are not mere ministerial duties. The head of an execu-
tive department of the Government in the administration of the
various and important concerns of his office is continually re-
quired to exercise judgment and discretion. He must exercise
his judgment in expounding the laws and resolutions of Con-
gress under which he is from time to time required to act.

That the decision of the questions presented to the Secretary
of the Interior was no merely formal or ministerial act is shown
beyond the necessity of argument by a perusal of the foregoing
statement of the issues presented by this record for the deci-
sion of the Secretary. Whether he decided right or wrong, is
not the question. Having jurisdiction to decide at all, he had

necessarily jurisdiction, and it was his duty to decide as he thought the law was, and the courts have no power whatever under those circumstances to review his determination by mandamus or injunction. The court has no general supervisory power over the officers of the Land Department, by which to control their decisions upon questions within their jurisdiction. If this writ were granted we would require the Secretary of the Interior to repudiate and disaffirm a decision which he regarded it his duty to make in the exercise of that judgment which is reposed in him by law, and we should require him to come to a determination upon the issues involved directly opposite to that which he had reached, and which the law conferred upon him the jurisdiction to make. Mandamus has never been regarded as the proper writ to control the judgment and discretion of an officer as to the decision of a matter which the law gave him the power and imposed upon him the duty to decide for himself. The writ never can be used as a substitute for a writ of error. Nor does the fact that no writ of error will lie in such a case as this, by which to review the judgment of the Secretary, furnish any foundation for the claim that mandamus may therefore be awarded. The responsibility as well as the power rests with the Secretary, uncontrolled by the courts.

Neither the case of *Roberts* v. *United States*, 176 U. S. 221, nor that of *American School of Magnetic Healing* v. *McAnnulty*, 187 U. S. 94, decides anything opposing these views.

In the *Roberts* case it was simply decided that the duty of the Treasurer to pay the money in question in that case was ministerial in its nature and should have been performed by him on demand, and that, therefore, mandamus was the proper remedy for his failure to do it.

In the *McAnnulty* case it was held that the order of the Postmaster General to the postmaster in the city of Nevada, not to deliver the mail to the relator, was not a justification for such refusal, because the order was given without authority of law, and the postmaster could, notwithstanding such order, be compelled by mandamus to do his duty and deliver the mail. The case has no relevancy to the one in hand.

We are so clearly of opinion that the decision of the defendant in this case was judicial in its nature that further argument upon the subject is needless.

The judgment of the Court of Appeals of the District of Columbia is

*Affirmed.*