**AMBRUSTER v. MELLON, Secretary of the Treasury, et al.**

**No. 4913.**

Court of Appeals of District of Columbia.

Submitted April 10, 1930.

Decided May 5, 1930.

C. B. Slemp and Jno. W. Price, both of Washington, D. C., Francis C. Lowthorp, of New York City, and Rees A. Gillespie, of Washington, D. C., for appellant.

Leo A. Rover, U. S. Atty., and James B. Horigan, Asst. to Solicitor Department of Agriculture, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice.

An appeal from a decree of the lower court dismissing the amended bill of complaint of the plaintiff, upon motion of the defendants.

The plaintiff below sought an injunction to restrain the Secretary of the Treasury, the Secretary of Agriculture, and the Secretary of Commerce, from permitting the importation into this country of certain kinds and conditions of ergot of rye, which plaintiff claims to be under the legal standard, and dangerous to the public health when used, claiming also that such importations resulted in irreparable injury to plaintiff as an importer and owner of large stores of ergot of rye, already imported into this country, of standard character and usefulness.

It is recited in the bill that ergot of rye is a crude drug consisting of grains of rye which have been peculiarly altered in substance by a certain fungus growth. From the crude article is manufactured what is known as "fluid extract of ergot," which is a valuable preparation extensively used by physicians for emergencies in obstetrical cases. Both the crude drug and the extract are listed and described in the United States Pharmacopoeia and National Formulary, as well as other works on Materia Medica. There is practically no crude ergot produced in this country. Importations of a superior class arrive here from Spain, while inferior products come from certain other foreign countries. The latter importations frequently arrive in bad condition and are unfit to be used in the manufacture of the medicinal extract. The plaintiff charges that the defendants, the Secretary of the Treasury and the Secretary of Agriculture, have since September 1, 1927, in violation of section 7 of the Federal Food and Drugs Act (34 Stat. 768 [21 USCA § 8]), and of Regulation 30, subsection B, of the Regulations for the enforcement of the Federal Food and Drugs Act, knowingly admitted through the Customs House crude ergot of rye of inferior quality and condition and not fit for use in the manufacture of medicinal extract of ergot; and that the defendants have knowingly and willfully permitted various quantities of substandard crude ergot thus imported, to be sold and shipped in interstate commerce in this country under false and misleading brands, without causing them to be seized by the proper officers for condemnation, destruction, or export. Plaintiff also states that he has lawfully imported into this country and holds in stock large quantities of pure standard ergot of rye of superior quality and value, and that he will suffer great loss if inferior ergot is allowed to be put upon the market under misleading brands and false descriptions.

The plaintiff prayed that the defendants be enjoined from admitting into this country importations of crude ergot of rye which do not, upon proper examination, meet all the requirements of the Federal Food and Drugs Act and the United States Pharmacopoeia, and to recall all stocks already admitted which do not comply therewith; and that defendants be required to enforce the act so as to prevent the entry of crude ergot into this country when impure and beneath the standard, and also "be required to act with all due and prompt diligence in the enforcement of the said Act, in the public health interest. * * * *"

█ In our opinion the ruling of the lower court dismissing the bill of complaint was right, for the reason, among others, that the proceedings of the defendants which are challenged by the bill were performed by them in the lawful exercise of their jurisdiction under the statute, and their action is not shown to be capricious or arbitrary, and consequently is not reviewable in a suit for an injunction.

Section 2 of the Federal Food and Drugs Act (21 USCA § 2), forbids the importation into this country from any foreign country, of any drug which is adulterated or misbranded within the meaning of the act. Section 3 (21 USCA § 3), provides that the Secretary of the Treasury, the Secretary of Agriculture, and the Secretary of Commerce, shall make uniform rules and regulations for carrying out the provisions of the act. Sections 7 and 8 (21 USCA §§ 8, 9), define the conditions under which a drug shall be considered as adulterated or misbranded. Section 11[1] provides for a proceeding whereby the Secretary of Agriculture may examine samples of any drug offered to be imported into the United States, in order to determine whether it is adulterated or misbranded within the meaning of the act, or is otherwise dangerous to health, or is falsely labeled in any respect; and any drug found to be of such description shall be refused admission. In accordance with the provisions of the act the Secretary of the Treasury, the Secretary of Agriculture and the Secretary of Commerce promulgated certain official regulations for the enforcement of the Federal Food and Drugs Act, and the same have been continuously in force under the act.

██ The statute accordingly invested the appellees with authority to determine whether imported drugs were adulterated or misbranded in the sense of the act, when offered for entry into this country. Such authority is not simply ministerial in character, but calls for a finding of facts and the exercise of judgment upon the facts when found. Accordingly the exercise of this authority by the appellees will not be reviewed by the

courts unless it has been capriciously or arbitrarily exercised.

In Commercial Solvents Corporation v. Mellon, Secretary of the Treasury, 51 App. D. C. 146, 277 F. 548, an order of the Secretary was challenged, which provided that fusel oil should not be considered to be a synthetic organic chemical within the meaning of the Dye and Chemical Control Act, approved May 27, 1921 (42 Stat. 18). It was held by the court that the authority given to the Secretary of the Treasury by the act, to administer the same, gave him the implied authority to interpret it, because interpretation was necessary to the performance of his administrative duty; and that the courts cannot review, by mandamus or injunction, a decision of the Secretary of the Treasury, made within his jurisdiction, to interpret the act, if he did not act in a capricious or arbitrary manner. Accordingly the court sustained the dismissal of a bill for an injunction to restrain the enforcement of the Secretary's order.

In support of this ruling, the court cited New Orleans v. Paine, 147 U. S. 261, 13 S. Ct. 303, 37 L. Ed. 162; Riverside Oil Co. v. Hitchcock, 190 U. S. 316, 23 S. Ct. 698, 47 L. Ed. 1074; Ness v. Fisher, 223 U. S. 683, 32 S. Ct. 356, 56 L. Ed. 610; Duncan Townsite Co. v. Lane, 245 U. S. 308, 38 S. Ct. 99, 62 L. Ed. 309; Houston v. St. Louis Packing Co., 249 U. S. 479, 484, 39 S. Ct. 332, 63 L. Ed. 717; Brougham v. Blanton Mfg. Co., 249 U. S. 495, 39 S. Ct. 363, 63 L. Ed. 725; Hall v. Payne, 254 U. S. 343, 41 S. Ct. 131, 65 L. Ed. 295; Handel v. Lane, 45 App. D. C. 389; United States ex rel. Ashley v. Roper, 48 App. D. C. 69; United States ex rel. Hall v. Lane, 48 App. D. C. 279.

In our opinion, the bill discloses that the defendants below were invested with authority to pass upon the admission of the importations complained of, and fails to allege facts from which it can be inferred that their action in respect to the present importations was capricious or arbitrary.

The decree of the lower court is therefore affirmed.

[1] 21 USCA § 15.