## CITY OF CHICAGO. Ill., et al. v. KIRKLAND et al.

### No. 5658.

Circuit Court of Appeals, Seventh Circuit.
Nov. 21, 1935.

Barnet Hodes, Corp. Counsel, and Joseph F. Grossman, and William V. Daly, Assts. to Corp. Counsel, all of Chicago, Ill., for appellants.

John L. McInerney, of Chicago, Ill. (Bernhardt Frank, of Chicago, Ill., of counsel), for appellant Edward J. Kelly, Mayor.

William C. Boyden, Jr., David A. Watts, Harold M. Keele, and Don M. Peebles, all of Chicago, Ill., for appellees.

Before ALSCHULER and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Under the ordinances of the city of Chicago, the mayor is authorized to issue and revoke licenses to theaters. The authority to revoke is conditioned upon the existence of the fact that the licensee has violated or is violating the city ordinances or state statutes. The mayor, having witnessed the production of the play "Tobacco Road," found the same to be indecent and degrading, and the production of same, therefore, to be a violation of the city ordinances, and revoked the license of the theater in which it was produced. The District Court awarded a preliminary injunction restraining the mayor from carrying the revocation into effect, and this appeal followed.

The pertinent sections of the ordinance are included in the footnote.[1]

1 "4222. *Indecent acts, suggestive singing, abusive language, obscene gestures.* Any person who shall commit any indecent, lewd or filthy act in any place in the city, or shall utter any lewd or filthy words, or shall sing any song the words of which are suggestive of indecency or immorality, or use any threatening or abusive language in the hearing of other persons publicly, or shall make any obscene gesture to or about any other persons publicly, shall be deemed a disorderly person, and shall be fined not less than five dollars nor more than one hundred dollars for each offense.

"4223. *Indecent or lewd books, pictures, plays, etc.—exhibition of picture of nude figure.* It shall be unlawful for any person to exhibit, sell or offer to sell, or circulate or distribute, any indecent or lewd book, picture or other things whatever of an immoral or scandalous nature, or to exhibit, in any place where the same can be seen from the public highway, or in a public place frequented by children which is not connected with any art or

The evidence submitted includes the script of the play as produced, and certain affidavits of various parties, most of whom had seen the production upon the stage. These witnesses are far from accord. Eminent citizens bear witness to totally different impressions from their personal observation of the play. On the one hand, an ex-governor, a circuit judge, judges of the municipal court, members of the bar, and other credible witnesses testify that certain scenes in the play portray vividly, with wealth of revolting detail, sexual excitement, sensuous emotion, and lustful passion; present obvious suggestions of seduction, adultery, and incest, and repeated profanity and blasphemy. They say that gestures and actions of the actors, not shown by the script, tend strongly to degrade and to debase the mind and moral standards of the observers.

For the appellees, eminent clerics, a professor of literature, members of civic dramatic organizations, well-known writers, and other witnesses, prominent in the city, tell us that the production of the play is of Zola-like, realistic character, representative and reproductive of a phase of life in the southern part of the United States so sordid and revolting as to inspire in hearers the zeal of crusaders to bring about the removal of such festers from our national social structure. These witnesses see in the play another "Uncle Tom's Cabin," the widespread production of which will create and disseminate a country-wide demand for a healthful change in the education and environment of the human beings living under the sordid conditions pictured.

We have read the script and the affidavits of those who have seen and heard the production. The members of this court, and apparently the district judge, have not seen the play produced. The motives of the respective witnesses are not to be impeached. They are men and women of such character, so lacking in personal interest, that their good faith, high intent, and honesty of purpose must stand unchallenged and above question. The conflict among them arises out of the variant mental and intellectual attitudes from which the play has been viewed. One sees obscenity unexcused by any motive and un-

redeemed by good intent. The other sees revolting realism wholly excused, however, by the further and nobler intent of inspiring desire to remedy evil conditions.

In cases such as this, at least, the judiciary is not a superior arbiter of right or wrong, or the custodian of the moral or ethical standards of citizens. Rather, the court is part of one of the co-ordinate branches of government charged with one duty and burdened with one responsibility—that of determining whether under the facts, once determined, an act done or threatened, either by private citizens or public official is legal, in accordance with the law. And just as courts are loath, except in the clearest of cases, to declare an act of the Legislature invalid, so, too, they are loath, except in the clearest of cases, to declare invalid the acts of that other co-ordinate branch of the government, the executive or administrative department. Indeed, they have no power at will to invalidate official administrative acts. They may inquire and determine only whether such acts are legal. Such inquiry necessitates, incidentally to its correct reply, the correlated inquiry of whether the administrative or legislative act is arbitrary, without basis for legal action—whether, in short, it is reasonably within the legal power of that governmental department whose act is complained of.

While some courts, in cases where revocation of a right or license is conditioned upon the fact that the statutes or ordinances have been violated, have held that a prior conviction is an essential condition precedent to administrative action, the contrary is quite generally the rule, and the administrative officer or other fact-finding body may pass upon the question of violation, preliminary to executive or legislative action. Pearson v. Zehr, 138 Ill. 48, 29 N.E. 854, 32 Am.St.Rep. 113; Sings v. City of Joliet, 237 Ill. 300, 86 N.E. 663, 22 L.R.A.(N.S.) 1128, 127 Am.St.Rep. 323; Wiggins v. City of Chicago, 68 Ill. 372; Malkan v. City of Chicago, 217 Ill. 471, 75 N.E. 548, 2 L.R.A.(N.S.) 488, 3 Ann. Cas. 1104; American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90. Under this rule, however, to furnish due process of law, it is equally logical and judicially well set-

educational exhibition, any picture representing a person in a nude state, or to exhibit or perform any indecent, immoral or lewd play or other representation, under a penalty of not less than twenty dollars nor more than one hundred dollars for each offense."

tled that such administrative action should be subject to judicial review. Ohio Valley Water Co. v. Ben Avon Borough, 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908; Southern Ry. Co. v. Com. of Virginia, 290 U.S. 190, 54 S.Ct. 148, 78 L.Ed. 260.

The extent of such review is not so generally agreed upon, but in the United States courts, it is the established rule that whether established facts, found by the administrative body, amount to a violation, becomes a question of law for the court.

Thus where an injunction was granted against an order of the postmaster general barring certain literature from the mails because in violation of federal statutes, the Supreme Court, in American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 39, 47 L.Ed. 90, said: "Conceding, arguendo, that when a question of fact arises, which, if found in one way, would show a violation of the statutes in question in some particular, the decision of the Postmaster General that such violation had occurred, based upon some evidence to that effect, would be conclusive and final, and not the subject of review by any court, yet to that assumption must be added the statement that, if the evidence before the Postmaster General, in any view of the facts, failed to show a violation of any Federal law, the determination of that official that such violation existed would not be the determination of a question of fact, but a pure mistake of law on his part, because the facts, being conceded, whether they amounted to a violation of the statutes would be a legal question, and not a question of fact." To the same effect is Swearingen v. United States, 161 U.S. 446, 16 S.Ct. 562, 40 L.Ed. 765.

■ Otherwise stated, this legal question is whether there was sufficient evidence before the administrative officer to justify a finding of violation. In other words, the judiciary is not permitted to substitute its judgment upon disputed facts for that of the administrative officer. It may inquire only whether those facts include substantial evidence sufficient to justify a finding of violation. Stated otherwise again, the limited question submitted to the court is whether the administrative officer has acted arbitrarily and, therefore, illegally. Thus in Ambruster v. Mellon, 59 App.D.C. 341, 41 F.(2d) 430, 432, the Court of Appeals for the District of Columbia said: "The statute accordingly in-

vested the appellees with authority to determine whether imported drugs were adulterated or misbranded in the sense of the act, when offered for entry into this country. Such authority is not simply ministerial in character, but calls for a finding of facts and the exercise of judgment upon the facts when found. Accordingly the exercise of this authority by the appellees will not be reviewed by the courts unless it has been capriciously or arbitrarily exercised."

That the Supreme Court agrees that the exercise of judgment upon facts by an administrative officer is not subject to judicial review except to determine whether the action complained of was arbitrary, i. e. unsupported by sufficient evidence, is apparent from the language in Riverside Oil Co. v. Hitchcock, 190 U.S. 316, 23 S. Ct. 698, 702, 47 L.Ed. 1074, as follows: "That the decision of the questions presented to the Secretary of the Interior was no merely formal or ministerial act is shown beyond the necessity of argument. * * * Whether he decided right or wrong, is not the question. * * * If this writ were granted we would require the Secretary of the Interior to repudiate and disaffirm a decision which he regarded it his duty to make in the exercise of that judgment which is reposed in him by law, and we should require him to come to a determination upon the issues involved directly opposite to that which he had reached, and which the law conferred upon him the jurisdiction to make. Mandamus has never been regarded as the proper writ to control the judgment and discretion of an officer as to the decision of a matter which the law gave him the power and imposed upon him the duty to decide for himself. The writ never can be used as a substitute for a writ of error."

Again in State of Louisiana v. McAdoo, 234 U.S. 627, 34 S.Ct. 938, 941, 58 L.Ed. 1506, the court said: "There is a class of cases which hold that if a public officer be required by law to do a particular thing, not involving the exercise of either judgment or discretion, he may be required to do that thing upon application of one having a distinct legal interest in the doing of the act. Such an act would be ministerial only. But if the matter in respect to which the action of the official is sought is one in which the exercise of either judgment or discretion is required, the courts will refuse to sub-

966

stitute their judgment or discretion for that of the official intrusted by law with its execution. Interference in such a case would be to interfere with the ordinary functions of government."

Thus it is clear that the only question legitimately before us is whether, in the present instance, the mayor acted upon evidence which would justify a finding of violation of the ordinances of Chicago by appellees. It is not a question of whether he decided rightly or wrongly. We are powerless to review his action as by writ of error, or to substitute our judgment for his. We may inquire only as to whether he acted arbitrarily.

To this question there can be but one answer. The mayor saw the play. He saw the gestures and actions of actors and actresses complained of. He had before him this evidence; and in the absence of personal observation on our part, and examining only the evidence in the record, we must find that there is substantial credible evidence to support his finding. It cannot be said that he acted without justification or arbitrarily; therefore, the District Court could not rightfully set aside and supersede his administrative action.

In view of our conclusions, though feeling that the jurisdictional questions presented by appellants are without merit, it is unnecessary to discuss them.

The decree is reversed, with direction to dissolve the preliminary injunction.