# McKENZIE *v.* FISHER.

INJUNCTION; DEMURRER; SECRETARY OF THE INTERIOR; REVIEW OF DECISION; PRESUMPTIONS; ADDITIONAL HOMESTEAD ENTRY; ASSIGNMENT.

1. Injunction will lie, in the absence of an adequate remedy at law, to restrain the threatened violation of a plain official duty requiring no exercise of discretion, or the threatened destruction of a vested right by an act clearly beyond the official authority.

2. Where a bill is filed to enjoin official action, it is analogous to and is governed by the same principles as a petition for mandamus, and it is preferable practice for the defendant, instead of demurrring, to make answer, setting out in full the facts upon which he relies in support of his action in the premises, as in the case of mandamus. (Citing *United States ex rel. West* v. *Hitchcock,* 19 App. D. C. 333.)

3. On demurrer to a bill for injunction the case must be considered upon the facts alleged, which, to the extent that they are well pleaded as facts, and not as conclusions of law, are admitted by the demurrer.

4. Allegations in a bill, the effect of which depend upon the construction of a statute, amount to conclusions of law rather than averments of facts, and are not admitted by demurrer.

5. The performance by the Secretary of the Interior of the duty of ascertaining whether a private entry of land is within reserved territory involves the exercise of discretion, and his decision is not a matter of judicial inquiry.

6. It will be presumed that a decision by the Secretary of the Interior that certain lands were within reserved territory, and not subject to private entry, was based upon facts which it was his duty to ascertain and determine the effect of, and upon reasons which he deemed adequate.

7. Where a soldier's original entry was within reserved territory, and therefore void, his homestead right cannot be said to have been exercised, and he has no right of additional entry, under sec. 2306, Rev. Stat. (U. S. Comp. Stat. 1901, p. 1415), which he may assign.

8. The right to make an additional homestead entry, conferred upon discharged soldiers by U. S. Rev. Stat. § 2306, cannot be exercised by an assignee, where the assignor's original entry was within reserved

territory, and therefore void, and it does not appear that the assignment was made before the cancelation of the entry.

No. 2453.   Submitted December 4, 1912.   Decided February 25, 1913.

HEARING on an appeal by the plaintiff from a decree dismissing a bill for injunction.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appellant, Alexander McKenzie, appeals from a decree dismissing a bill for injunction brought by him against the Secretary of the Interior.

The bill alleges that plaintiff, Alexander McKenzie, is the assignee of George A. Godsmark, who, as a discharged soldier, became entitled to an additional homestead entry of public land, by virtue of sec. 2306, Rev. Stat. (U. S. Comp. Stat. 1901, p. 1415). As such assignee he made an entry in accordance with law and the regulations of the Department of the Interior, upon certain parcels of public land in the Duluth district in the State of Minnesota, containing 120 acres. That plaintiff's assignor, Godsmark, had made his original homestead entry, June 17, 1870, upon certain public land in the State of Michigan, containing 40 acres, in compliance with the provisions of the homestead law of May 20, 1862. (Sections 2289–2317, Rev. Stat., U. S. Comp. Stat. 1901, pp. 1388–1422.) That Godsmark made the required affidavit of settlement and cultivation, and received the usual certificate of the Register of the Land Office at Ionia, Michigan; he paid the required fees and obtained his receipt therefor and a record of his entry, etc. That thereafter the register and receiver at Ionia transmitted said homestead entry papers to the Commissioner of the General Land Office, by whom the same were filed and recorded, after approval and allowance. That the said entry so made and allowed was entered and posted upon the tract books of the Department. That the records of said Department show that said entry was contested by one Hess, which contest was adjudicated and Godsmark's entry was canceled for abandonment, on February 15, 1872. The records

of the Department show that on February 27, 1872, said Hess entered said land, and, having shown compliance with the law, received a patent for the same in 1877, which patent is outstanding, unimpeached and uncanceled. That the Commissioner of the General Land Office, in considering the application of plaintiff aforesaid, refused to recognize as binding, or of any force and effect, the records and adjudications of the Department in 1870, 1872, and 1877, determining the status, and disposing of said land, showing the entries made as aforesaid, but assumed, on January 20, 1911, that he had the power to reopen and readjudicate the right of Godsmark to make his original entry at Ionia in 1870, as aforesaid. That by decision on said date he reopened and readjudicated the right of Godsmark to make his original entry as aforesaid, claiming that the title to the land so entered had previously passed out of the United States to the State of Michigan under the act of Congress of June 3, 1856; that the entry of Godsmark had been erroneously allowed, and therefore rejected plaintiff's application. That this decision was affirmed on appeal to the Secretary on April 19, 1911. It further averred that all lands granted by the act of June 3d, 1856, had to be identified by adjudication of the Interior Department to pass under said act; and the records of the Department show that it had from time to time adjudicated the grant by said act, made to the State of Michigan, and certified the title to such as had been found to have passed thereby. The Department, from and after the passage of said act, had full jurisdiction in the adjustment of titles until the same passed out of the United States; and, exercising that jurisdiction, adjudicated titles to said lands. According to said records the United States had parted with title to all lands in the township in which said Godsmark made his original·entry. That the records show that the particular land entered by Godsmark was never patented to the State of Michigan, or to any person claiming under the said act of 1856, or any act supplementary thereto. That from the date of the said grant to the present time, so far as the records of the Department show, neither the State nor any railway com-

pany has asserted any claim to the land formerly embraced in Godsmark's entry, and patented to Hess in 1877.

That on March 3, 1873, when the act was passed granting additional rights to soldiers (sec. 2306, Rev. Stat.), according to the adjudications of the Land Department as then existing, the original entry of Godsmark, made in 1870, was valid when made; the records then showing that Godsmark had made an original homestead entry of 40 acres. That the Department, in 1870–1877, had full jurisdiction, and in the exercise thereof adjudicated the status of said land and the right of said Godsmark under both the law and the facts. That the application of plaintiff has not been adjudicated on its merits, under the law, because the defendant now seeks to finally, and is about finally to reject said application under claim of power to reopen and readjudicate the right of Godsmark to make the entry in 1870; which action is arbitrary, capricious, and without due regard to the rights of plaintiff, or the duty of defendant under the law, and in defiance of his own records and adjudications, and is *ultra vires.* That the final rejection intended would result in great and irreparable damage to plaintiff, etc.

The prayers are for an injunction restraining any order or decision already made or to be made, rejecting plaintiff's application as assignee of Godsmark, on the ground that the adjudication made as to Godsmark's entry was erroneous, and therefore does not form the valid basis of a soldier's additional entry under sec. 2306, Rev. Stat.

2. Restraining the reopening and readjudication of the validity of Godsmark's entry in 1870.

3. From ignoring and impeaching the validity of the adjudications made from 1870 to 1877.

4. Restraining defendant from denying plaintiff the right of trial upon the merits of his application.

5. Requiring defendant to recognize and give effect to the records of the Department as made from 1870 to 1877, and to respect the adjudication and record of the entry of Godsmark, and to perform his duty under the law by giving plaintiff's application consideration and trial upon the merits thereof.

The defendant demurred to the bill on the grounds stated as follows:

1. That it appears on the face of the bill that the matters thereby sought to be controlled are such as by Congress are committed wholly and exclusively to the jurisdiction of the defendant.

2. That the exercise of that jurisdiction in and over the matters set forth in said bill involve the exercise of judgment and discretion, and is not purely ministerial in its nature.

3. That it appears on the face of the bill that in the exercise of that jurisdiction as aforesaid, and at the instance of the plaintiff therein, the defendant in due and regular course, according to due process of law, considered and determined the merits of plaintiff's case as set forth in his bill, and decided that plaintiff's application to enter public land of the United States must be rejected, and that by said bill plaintiff is seeking to secure the review of the defendant's decision by this court, notwithstanding the exclusive and final nature of defendant's jurisdiction, and that no appeal to a judicial tribunal is provided or authorized by law;

4. That the effect of granting plaintiff's prayer for relief would be the substitution of the court's judgment for that of the defendant in a matter exclusively within defendant's jurisdiction.

5. And that the plaintiff has not, in and by said bill, made or stated a case as does or ought to entitle him to any relief such as is thereby sought and prayed for from or against the defendant.

The demurrer was sustained, and the plaintiff, declining the leave to amend, his bill was dismissed.

*Mr. D. N. Clark, Mr. Homer Guerry,* and *Mr. W. W. Wright* for the appellant.

*Mr. Charles W. Cobb,* Assistant Attorney-General for the Interior Department, *Mr. F. W. Clements,* Assistant Attorney, and *Mr. C. E. Wright,* Assistant Attorney, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the court:

The object of the bill is to coerce the Secretary of the Interior in the exercise of certain official duties in respect of the administration of the public lands, and in that respect is somewhat correlative to the action of mandamus. *Noble* v. *Union River Logging Co.* 147 U. S. 165–172, 37 L. ed. 123–126, 13 Sup. Ct. Rep. 271.

The writ of mandamus lies to compel the performance of a plain official duty requiring no exercise of discretion; and likewise, when such a duty is threatened to be violated, or a vested right is threatened to be destroyed by an act clearly beyond the official authority, the aggrieved party, without adequate remedy at law, is entitled to a writ of injunction to restrain such action. *Garfield* v. *United States,* 211 U. S. 249–261, 53 L. ed. 168–174, 29 Sup. Ct. Rep. 62; *Ballinger* v. *United States,* 216 U. S. 240–248, 54 L. ed. 464–467, 30 Sup. Ct. Rep. 338.

The writ of injunction, as sought to be applied in this case, being analogous to, and governed by, the same principles as the writ of mandamus, it would be more satisfactory had the defendant, instead of demurring to the bill, made answer thereto, setting out in full the facts upon which he relied in support of his action in the premises, in conformity with the practice which has been recommended in mandamus proceedings. *United States ex rel. West* v. *Hitchcock,* 19 App. D. C. 333–346.

The appellee cites, and relies upon in argument, the decision of this court in a former action of mandamus brought by McKenzie to compel favorable action upon the same application for entry. *United States ex rel. McKenzie* v. *Fisher,* 39 App. D. C. 7. The petition and the return in that case set out all the facts and the decision of the Secretary thereon. With all the facts before it, the court declined to pass upon the validity of Godsmark's entry, holding that the determination of that question was within the scope of the Secretary's official duties, and, involving the exercise of discretion, was not subject to judicial review. As there is no answer here setting out the record as in

that case, we cannot take cognizance of the facts shown thereby, but must consider the case upon the facts alleged, which, to the extent that they are well pleaded as facts, and not as conclusions of law, are admitted by the demurrer.

The bill alleges, as we have seen, that the Secretary has decided that the entry of Godsmark, made in 1870, was void because the title to the land entered had, prior thereto, passed out of the United States to the State of Michigan under the terms of the land grant act approved June 3, 1856. (11 Stat. at L. 21, chap. 44.)

It is then alleged that this adjudication was beyond the powers of the Secretary for the reason that the records of the Land Office show that the said land has never, at any time, been certified over to the State of Michigan under the said act of Congress, and has never been patented to the said State or anyone claiming under it, wherefore it is said that said land was, in 1870, and has since remained, part of the public land of the United States, and subject to entry as such. The effect of these allegations depends upon the construction of said act of June 3, 1856, and amount, therefore, to conclusions of law rather than allegations of facts that are to be accepted and acted upon strictly as such. The said act granted to the State of Michigan for the benefit of railways empowered by its authority all of the alternate sections of land designated by odd numbers that are contained within a territory six sections in width on each side of the fixed line of such railway. The even-numbered sections remained the property of the United States for the purpose of sale, and are withdrawn from private entry. There is no provision of the law requiring that such lands shall be demanded by, and certified to, the State of Michigan, or patented to the State or those claiming under it as a condition precedent to the taking effect of the grant, or reserving the land from entry by others. The location of the line of railway fixes the area and boundaries of the reserved territory which are readily ascertainable and rendered certain. Whenever, therefore, a private entry was sought to be made and perfected upon any section of land that might fall within any such reservation, it was the duty of the

Secretary to make inquiry whether said land was within or without said boundaries. The performance of this duty of ascertainment involved the exercise of discretion. He was compelled to make the decision, and whether his decision be right or wrong is not a matter of judicial inquiry. *United States ex rel. Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316–325, 47 L. ed. 1074–1078, 23 Sup. Ct. Rep. 698.

The bill, without setting out the decision of the Secretary, alleges, merely, that he did decide that the land entered by Godsmark was within the reservation provided for by the act. As heretofore said, this did not depend upon the certification or patenting of the lands, but upon the fact whether they were embraced within the granted and reserved territory; which facts were for the determination of the Secretary. As the grounds of his decision are not set out, it is to be presumed that he based it upon the facts which it was his duty to ascertain and to determine the effect of; and upon reasons which he deemed adequate. *United States ex rel. West* v. *Hitchcock,* 205 U. S. 80–85, 51 L. ed. 718–721, 27 Sup. Ct. Rep. 423.

Having determined that Godsmark's entry was within the forbidden territory, and therefore void, it followed that his homestead right had not been exercised, in whole or in part, and that therefore there was no additional right under sec. 2306, Rev. Stat., which he could assign.

Hence the plaintiff acquired no right under which he was entitled to entry.

There are other allegations in the bill which would seem also to prevent the relief sought. It is alleged that the entry of Godsmark in 1870 upon what is assumed to be public land open thereto was contested for abandonment, by one Henry Hess, as provided by sec. 2297, Rev. Stat. (U. S. Comp. Stat. 1901, p. 1398), which resulted in a decision, on February 15. 1872, canceling Godsmark's entry and awarding the land to Hess, which was afterwards patented to him. It is not alleged that plaintiff took his assignment of Godsmark's additional right before the cancelation of the said entry. When his entry was canceled it would seem to follow that Godsmark had the right to make an-

other homestead entry upon the public lands, and until that was done, and less than a full homestead taken up, he would have no addition under sec. 2306, Rev. Stat., that he could assign to anyone.

If plaintiff in fact took his assignment while Godsmark's entry was recognized as valid, it was his duty to allege it.

There was no error in dismissing the bill, and the decree is affirmed with costs.                                 *Affirmed.*

An application by the appellant for the allowance of an appeal to the Supreme Court of the United States was denied March 12, 1913.