290    UNITED STATES ex rel. WEST *v.* HITCHCOCK.

Syllabus.                    [26 App.

---

# UNITED STATES EX REL. WEST *v.* HITCHCOCK, SECRETARY OF THE INTERIOR.

---

MANDAMUS; INDIAN TRIBES; OFFICERS.

1. Mandamus is not the proper writ to control the judgment and discretion of a public officer as to the decision of a matter which the law gives him the power, and imposes upon him the duty, to decide for himself.

2. Under the agreement of June 4, 1891, between the United States and the

Wichita Indians, and under the act of Congress of March 2, 1895, ratifying that agreement, the Secretary of the Interior is vested with authority to decide whether an applicant is entitled to an allotment of land on the Wichita reservation, and his decision, being an exercise of judgment and discretion, is not reviewable by the courts, even though such decision may seem to be an erroneous one. (Following *United States ex rel. Cox* v. *Hitchcock*, 19 App. D. C. 347.)

3. Under the agreement of June 4, 1891, between the United States and the Wichita Indians, and under the act of Congress of March 2, 1895, ratifying that agreement, an applicant for an allotment of land must be a member of the Wichita tribe of Indians, or some affiliated band, either by nativity or adoption; and a decision of the Secretary of the Interior, denying an application for enrolment by adoption with the Wichita tribe, is, in effect, a decision that the applicant is not by nativity or adoption a member of that tribe, and hence is not entitled to an allotment of land.

No. 1555.   Submitted November 9, 1905.   Decided December 5, 1905.

HEARING on an appeal by the relator from a judgment of the Supreme Court of the District of Columbia dismissing his petition for a writ of mandamus against the Secretary of the Interior.                                        *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from an order of the supreme court of the District of Columbia, denying a writ of mandamus to require the Secretary of the Interior to approve the selection by the relator, Willis C. West, of 160 acres of land in the Witchita reservation, in the territory of Oklahoma, under an act of Congress of March 2, 1895. The case was heard in the court below on issue joined on a plea interposed by the relator, the appellant here, to the answer of the appellee, the Secretary of the Interior, to the petition of the relator.

It appears that on August 5, 1901, the relator, claiming to be an adopted member of the Wichita Indian tribe, filed his petition in the supreme court of the District of Columbia, and rule to show cause followed.

In response, a demurrer to the petition was interposed, which,

292        UNITED STATES ex rel. WEST v. HITCHCOCK.

Statement of the Case.                    '[26 App.

by an order entered August 27, 1901, was sustained, the rule to show cause was discharged, and the petition dismissed. Upon appeal that order was reversed by this court, and the cause remanded "for further proceedings therein according to law."

The defendant below filed his answer to the petition, wherein, among other things, after reciting the duty laid upon him, as Secretary of the Interior, in the premises, he averred that, being without knowledge of relator's status at the time of his application for allotment, defendant, as such Secretary, examined and considered relator's application and all the evidence and proofs presented to him to support it, including all the matters now set forth in the petition, together with such other evidence and proofs bearing thereon as were embodied in the public records and files of the Indian Bureau and Department of the Interior, and that, upon full consideration thereof, the defendant, as Secretary of the Interior, did, on the 3d day of July, 1901, reach and announce a conclusion and decision that relator was not, by nativity or adoption, a member of the Witchita and affiliated bands of Indians, and for that reason was not entitled to an allotment, and thereupon denied relator's application.

The relator filed motion for the issuance of the peremptory writ, and later a demurrer, which were successively overruled.

Relator thereafter filed his several pleas (four in number) to which defendant demurred, the demurrer being overruled as to the first plea and sustained as to the others; and on the first plea, as follows, issue was joined: "The relator says that the defendant, as Secretary of the Interior, did not, by the decision alleged in the answer to have been made by him on July 3, 1901, decide that the relator was not by nativity or adoption a member of the Wichita or affiliated band of Indians, and for that reason deny him the said allotment."

Upon this issue the cause was tried by the court, to maintain which issue, on his part, relator offered in evidence a duly certified copy of the Secretary's said decision of July 3, 1901, and defendant, on his part, offered in evidence official exemplifications of the correspondence, decisions, regulations, etc., alleged to be the ones referred to in his answer, as well as of the

decision of July 3, 1901. To all save the last mentioned of defendant's evidence relator objected, and saved his exceptions to their admission.

Upon all the evidence the court found generally for the defendant, and specially that he did reach and announce a conclusion and decision that relator was not, by nativity or adoption, a member of the Wichita and affiliated bands of Indians, therefore not entitled to an allotment, and thereupon denied relator's application for allotment, and that the defendant, as Secretary of the Interior, disapproved relator's application for membership by adoption in the Wichita Indian tribe. Relator's prayer for the issuance of the peremptory writ was denied, the rule to show cause discharged, and the petition dismissed.

*Mr. S. A. Putman, Mr. W. C. Shelley,* and *Mr. W. H. Robeson* for the appellant.

*Mr. D. W. Baker,* United States Attorney for the District of Columbia, *Mr. Jesse C. Adkins,* and *Mr. Fred H. Barclay,* Assistants, for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

At the outset it is insisted by appellant that this court on the former appeal decided that the duties of the Secretary of the Interior in this case, as shown by the petition for the writ, were purely ministerial. We do not so understand it. A demurrer having been interposed, the court held that the conceded facts were those stated in the relator's petition, and consequently it appeared that the relator had done everything required of him by the statute. Now it appears that the defendant answered, and to that answer the relator filed a plea. In the former decision this court clearly recognized that the action of the Secretary calling for the exercise of judgment could not be controlled, saying: "It was for him to determine whether the relator was within the category of persons entitled to an allotment of land, whether the land selected was of the kind which the relator

294 UNITED STATES ex rel. WEST v. HITCHCOCK.

Opinion of the Court. [26 App.

was entitled to select, whether it interfered with the rights of any other persons, and all other preliminary matters going to the validity or invalidity of the relator's action."

Furthermore, in the case of *United States ex rel. Cox* v. *Hitchcock,* 19 App. D. C. 347, which was a similar proceeding to this, this court said: "The right of approval reserved to the Secretary by the act of Congress, and which, of course, involves the right of disapproval, is not a mere ministerial duty. Plainly it requires the exercise of judgment and discretion. It requires of the Secretary to determine whether the land selected is subject to selection, and whether all the prerequisites required by the law to be performed in order to justify his approval have in fact been performed."

This rule is in harmony with the analogous case of *United States ex rel. Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316, 47 L. ed. 1074, 23 Sup. Ct. Rep. 698, in which the court said: "Mandamus has never been regarded as the proper writ to control the judgment and discretion of an officer as to the decision of a matter which the law gave him the power and imposed upon him the duty to decide for himself."

If the Secretary of the Interior was vested with authority to decide whether the relator was entitled to an allotment under the agreement of June 4, 1891, and the statute ratifying it, then the performance of that duty was not a ministerial one, but required the exercise of judgment and discretion, and is not reviewable by the courts, even though it may seem that his determination is an erroneous one. We think there is no question but such power was vested in him. Sections 441 and 463 of the Revised Statutes (U. S. Comp. Stat. 1901, pp. 252, 262) give to the Secretary of the Interior management of all affairs of the Indians and all matters arising out of their relations. The power of Congress to deal with the Indians is of the most sweeping character, and it has been recognized and affirmed by the Supreme Court from the earliest days down to the present time. *Cherokee Nation* v. *Georgia,* 5 Pet. 1, 8 L. ed. 25; *Choctaw Nation* v. *United States,* 119 U. S. 1, 30 L. ed. 306, 7 Sup. Ct. Rep. 75; *Cherokee Nation* v. *Southern Kansas R. Co.* 135 U. S. 641, 34 L. ed. 295, 10 Sup.

. UNITED STATES ex rel. WEST *v.* HITCHCOCK.    295

D. C.]                    .Opinion of the Court.

Ct. Rep. 965; *Lone Wolf* v. *Hitchcock,* 187 U. S. 553, 47 L. ed. 299, 23 Sup. Ct. Rep. 216.    In *Stephens* v. *Cherokee Nation,* 174 U. S. 445, 43 L. ed. 1041, 19 Sup. Ct. Rep. 722, the court refused to hold that Congress could not empower the Dawes Commission to determine who were entitled to citizenship in each of the tribes, and make out correct rolls of citizens.

Congress having given very general powers to the Secretary of the Interior to deal with the Indians, we think that he is empowered to provide that an adoption by an Indian tribe of a person not an Indian must be approved by the Secretary of the Interior or his subordinate, the Commissioner of Indian Affairs. This is a proper regulation and one in the interest of the Indians. But, in the absence of any such regulation at a time when adoption is claimed, still the power to inquire into and decide that question is given by the agreement under which allotment is claimed by the relator.

Article 4 of that agreement provides that the allotments of land are to be approved by the Secretary of the Interior.    That fairly implies that he is to determine whether the party claiming the allotment is one of the parties referred to in article 2; that is, whether he is a member of the tribe or of the affiliated bands referred to.    The determination of the question is an exercise of discretion and judgment.

But it is contended by appellant that the evidence in the case "disproves the return of the Secretary° that he did reach and announce a conclusion and decision that the relator was not by nativity or adoption a member of the Wichita and affiliated bands of Indians, and for that reason was not entitled to an allotment under the agreement so ratified."

At the most, we can only decide whether the Secretary of the Interior did actually pass upon the question.    Whether his decision was right or wrong is not for us to decide.    The case was tried without a jury, and the court below made certain findings of facts, among them the following:

"(2) The court finds that the defendant did reach and announce a conclusion and decision that the relator was not, by nativity or adoption, a member of the Wichita and affiliated

296      UNITED STATES ex rel. WEST v. HITCHCOCK.

Opinion of the Court.                    [26 App.

bands of Indians, and for that reason was not entitled to an allotment of land as prayed, and that thereupon the defendant did deny the application of the relator for such allotment.

"(3) The court finds that the defendant, as Secretary of the Interior, disapproved the application of the relator for membership by adoption in the Wichita tribe or band of Indians."

It appears that in 1893 the regulations of the Indian Department were revised and provision made for the approval by the Indian Office of adoptions into Indian tribes, and that such provision has been continued and acted upon and recognized by the tribal authorities. It is insisted that, some years before this express provision for approval was in force, the relator was adopted as a member of the Wichita tribe, and that no retroactive effect can be given to the provision. However this may be, we believe that it was within the power of Congress to give to the Secretary of the Interior authority to determine who were entitled to citizenship in the Wichita tribe, and the agreement of June 4, 1891, provides for the determination of that question by the Secretary of the Interior when it provides, as it does, that the allotments of land shall be approved by him; and, as before stated, we so held when this case was here on petition and demurrer.

The power is a salutary one and in the interest of the Indians as well as of the government. This, however, is a phase of the question that we need not enlarge upon, for we have no more to do with the wisdom of the regulation and of congressional action than we have with the question whether the Secretary arrived at a correct decision in any given case.

That the relator was adopted on different occasions by the tribal authorities, and adoption refused on at least one occasion, we may concede, for the question is not that, but rather whether the adoption was ever approved by the Indian Office, or whether anything precluded the Interior Department from determining the question after the agreement of June 4, 1891, was approved by Congress on March 2, 1895. We think that the question was an open one, and that the Secretary of the Interior was free

to examine the question as to right of the relator to an allotment of land, and that it was his duty so to do.   When the Secretary of the Interior was called upon, in 1901, to consider the right of the relator to an allotment of land, it was permissible for him to examine the records of the Department of the Interior to aid him in determining the question.   The records disclosed that the question of the adoption of the relator into the Wichita tribe had been passed upon by his predecessor in February, 1898. That action approved a recommendation of the Commissioner of Indian Affairs, bearing date June 7, 1895, which showed that the council of the Wichita and affiliated tribes had refused to adopt the relator.   By his decision of July 3, 1901, it appears that on May 21, 1901, the council had voted in favor of the relator's adoption.   It would seem that these various and conflicting tribal actions were such as would require the Secretary of the Interior, in determining whether the relator was entitled to an allotment of land, to exercise judgment, and that it was not a mere ministerial duty that he was called upon to perform. The conclusion of the Secretary was that "the application of Willis C. West for enrolment by adoption with the Wichita tribe is denied."   We think this amounted to a decision that the relator was not by nativity or adoption a member of the Wichita or affiliated band of Indians, and for that reason not entitled to an allotment of land.

To approve or disapprove any alleged adoption of the relator by the Wichitas was a right vested in the Secretary of the Interior, and without his approval the relator could not become a member of the tribe.   Not being a member of the tribe by nativity or adoption, he was not entitled to any allotment of land, and the Secretary of the Interior, in refusing to approve an allotment, was exercising a duty calling for the exercise of judgment.   It follows that the answer of the Secretary was sufficient and not open to demurrer, which was therefore properly overruled.   The answer and plea raised an issue which was correctly decided by the trial court, and the objection taken to the admission of the evidence offered on behalf of the defendant was properly overruled.

Finding no reversible error in the proceedings in the lower court, we shall *affirm its judgment with costs. And it is so ordered.*

A writ of error to the Supreme Court of the United States was allowed December 7, 1905.