William A. Read et al., Appellants, v. Central Union
Telephone Company et al., Appellees.

Gen. No. 23,657.

William A. Read et al., Appellees, v. Central Union
Telephone Company et al., on appeal of Chicago
Telephone Company, Appellant.

Gen. No. 23,663.

William A. Read et al., Appellees, v. Central Union
Telephone Company et al., on appeal of American
Telephone & Telegraph Company, Appellant.

Gen. No. 23,664.

William A. Read et al., Appellees, v. Central Union
Telephone Company et al., on appeal of Central
Union Telephone Company, Appellant.

Gen. No. 23,670.

1.  WAR, § 5*—*supreme power of Government in prosecution of.*
The power of the Government in the prosecution of a war, not only
in the mobilization of the military forces and other immediate
military necessities, but also in the mobilization and utilization of
all resources of the country, is supreme.

2.  TELEGRAPHS AND TELEPHONES, § 15*—*what is power of Presi-
dent as to taking possession and control of telephone systems under
resolution of Congress during war.*  The President may, under the
authority of the joint resolution of Congress of July 16, 1918, when-
ever he deems it necessary for the national security and defense,
take possession and control of the telephone systems, and, in so
doing, he is not required to get the consent of those in whose pos-
session the properties may be, whether they be owners, receivers
or others.

3.  WAR, § 5*—*right of States to interfere with exercise of war
power by nation.*  The war power and all powers incident to it re-
side in the national right of self-preservation, and the means of
enforcing such right are left to the discretion of the nation and

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same
topic and section number.

cannot be interfered with at the pleasure of the States or their courts.

4.   TELEGRAPHS AND TELEPHONES, § 15*—*what is extent of right of President in taking possession and control of telephone systems in time of war.*   The question whether the conditions are such as to make necessary and render expedient the action of the President in taking possession and control of the telephone systems in furtherance of the national security and defense, under authority of the joint resolution of Congress of July 16, 1918, is one which lies wholly in his discretion, and the exercise of that discretion by him through his agents is not subject to injunction or other similar action of the courts.

5.   TELEGRAPHS AND TELEPHONES, § 15*—*what does not constitute taking of telephone property without just compensation.*   The joint resolution of Congress of July 16, 1918, authorizing the President, whenever he deems it necessary for the national security and defense, to take possession and control of telephone systems, is not unconstitutional as amounting to the taking of property without just compensation, since the resolution by express terms amply provides for just compensation.

6.   CONSTITUTIONAL LAW, § 159*—*what does not constitute taking telephone property without due process of law.*   The joint resolution of Congress of July 16, 1918, authorizing the President, whenever he deems it necessary for the national security and defense, to take possession and control of the telephone systems, is not unconstitutional as amounting to the taking of property without due process of law, since Congress is authorized by section 8, art. 1 of the Federal Constitution to make necessary laws for carrying into execution the power to declare war and to provide for the common defense and general safety.

7.   TELEGRAPHS AND TELEPHONES, § 15*—*what is nature of office and extent of powers of receivers acting for Postmaster General after telephone property taken over as war measure.*   The Postmaster General, in the physical operation of a telephone system taken over by the President pursuant to the war power conferred upon the latter by the joint resolution of Congress of July 16, 1918, may act through receivers who were in possession of the property at the time it was taken over by him, and they, acting as agents of the Postmaster General, and not as receiver, may take such action, relative to operation, as he may direct, without any order of the court appointing them.

Appeals from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding.   Heard in the Branch Appellate

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Court at the October term, 1917. *Certiorari* denied; order for writ of prohibition set aside; leave to file petition for removal of receivers and their counsel denied. Opinion filed February 28, 1919.

Counsel in Gen. No. 23,657:

Cassoday, Butler, Lamb & Foster, for appellants.

No appearance for appellees.

Counsel in Gen. Nos. 23,663, 23,664:

J. P. Wilson, N. C. Sears, N. T. Guernsey and E. S. Wilson, for appellants.

Cassoday, Butler, Lamb & Foster, for appellees.

Counsel in Gen. No. 23,670:

Edgar B. Tolman, for appellant.

Cassoday, Butler, Lamb & Foster, for appellees.

Per Curiam: On February 13, 1919, complainants filed a petition in this court, in connection with the above entitled appeals, praying that a writ of certiorari issue to the Superior Court of Cook county, Illinois, ordering that court to certify certain proceedings to this court and that this court review a certain order entered in such proceedings, dismissing a petition filed in that court by petitioners, and determine whether said order should not be quashed and the trial court ordered and directed to enter an order granting the prayer of said petition.

The record discloses that final decrees were entered by the Superior Court of Cook county, Illinois, July 10, 1917, in these causes, from which decrees, appeals have been prosecuted to this court. The abstracts and briefs have all been filed and the appeals are now

pending before this court, and would have been heard on oral argument on the 3rd of the present month but for the unavoidable absence of counsel, which necessitated a postponement until April, next. At the time the petition now before us was filed, upon suggestion of counsel, the petitioners were given 5 days within which to file suggestions in support of the petition and the respondents 5 days thereafter to file counter suggestions. On February 17, 1919, and before any suggestions were filed by either side, petitioners filed another petition praying that, pending the hearing on the petition of February 13th, this court issue its writ of prohibition to the Superior Court of Illinois, and to the receivers and their counsel, being the respondents to the original petition, enjoining and prohibiting them from taking any action in the Circuit Court of Marion county, Indiana, or elsewhere, that would recognize the claim of Postmaster General Burleson to jurisdiction and control over the receivers or the property of the Central Union Company. Upon presentation of this petition the order prayed for was duly entered, whereupon counsel for the respondents entered a motion to vacate and set aside said order. Subsequently the entire matter was argued orally, and counsel have submitted their suggestions in support of their respective contentions.

In the petition for the writ of certiorari, the petitioners alleged that the above entitled causes are pending in this court on appeal; that on February 5, 1919, they filed a petition in the Superior Court of Cook county, Illinois, in said causes, praying that that court enter an order instructing the receivers and their counsel not to send a certain telegram, which it was proposed to send to one Union N. Bethell, Chairman of the Federal Board of Control, duly appointed by the Postmaster General of the United States, in which they proposed to say:

"We recognize the authority of the Operating Board and will co-operate with it in 'the operation of

the Central Union property and in the defense of suits brought to question the validity of rates established by the Postmaster General;''

and praying further that the court instruct said receivers and their counsel to immediately take steps to preserve and protect their possession and control of the assets of said Union Company wherever located and resist, by all lawful means, any attempt on the part of anyone whatever to interfere with their possession and control, and further that the receivers be instructed to immediately desist from further enforcement in the State of Indiana or elsewhere of unlawful telephone rates that are in violation of the Public Utilities Laws of the States, respectively, where such intrastate rates are in effect, and the petitioners in the trial court further prayed for such other and further relief as that court might deem necessary or proper to preserve the rights of the parties as fixed in the final decrees entered by that court, and to protect the said assets and effects of the said Union Company pending the appeals from the final decrees so that the jurisdiction of the trial court and of this court over such property, assets and effects might be maintained until the rights of the parties therein are finally determined.

The petition for the writ of certiorari further alleges that upon the filing of the petition just referred to in the trial court, that court entered a rule on the respondents to answer the same; that said respondents failed to make answer to the petition, and thereafter the court entered an order dismissing said petition on its face, which petitioners contend was error.

It is further alleged that the failure to grant them the relief prayed for in said petition of February 5th deprived them of the rights secured to them by the final decrees of July 10, 1917, without due process of law and without just compensation.

The petitioners further allege that since the action of the Superior Court in dismissing the petition of

February 5th, they are informed and believe that the receivers have further acquiesced in the assumed authority exercised by the Postmaster General over the property, assets and effects of the Central Union Company, and are submitting in all things to his direction, authority and control, in violation of the duties assumed by them, and are enforcing in Indiana unlawful intrastate telephone rates established by the Postmaster General, in violation of the statutes of that State, and that they are thus exposing the property of the Union Company to jeopardy because of claims that will be made against it in the way of penalties, on account of the continued violations of the statutes of that State, and that, in so acting, the receivers are disqualifying themselves to act as receivers in any negotiations or dealings with the Postmaster General, or with the American Telephone and Telegraph Company and its officials, to whom it is alleged said Postmaster General is attempting to delegate the control and domination over said Union Company and said receivers.

The petitioners, in support of their contention that the Superior Court erred in dismissing their petition, contend:

(1)   That Albert S. Burleson, Postmaster General of the United States, is attempting to exercise supervision, possession, management and control over the property, assets and effects of the Union Company, now in the possession of the receivers, without any order having been entered by the Superior Court, or any other court having jurisdiction in the premises, in any way authorizing such action on his part.

(2)   That the Postmaster General has no right or authority to take over the supervision, possession, control and operation of the property, assets and effects of the Union Company under the terms of the joint resolution of Congress of July 16, 1918, except in furtherance of the national security and defense, and that such resolution does not authorize the President

or the Postmaster General to take over the possession, control and operation of the private business of telephone companies and of their operating income, regardless of actual war uses or aids and having no relation to the national security or defense, and that there is no need, for any legitimate purposes of the government, to take possession of the property, assets and effects of the Union Company or deprive the receivers, or the courts having jurisdiction over them, of the property and assets of the Union Company.

(3)    That if said resolution is construed otherwise, it must be held unconstitutional, null and void, because such action of the Postmaster General would amount to depriving the Union Company and the petitioners of their rights and property without due process of law and without just compensation, in violation of the provisions of the constitution.

(4)    That the Postmaster General is attempting to put the American Telephone and Telegraph Company, Theodore N. Vail and Union N. Bethell, defendants in the above entitled causes, and the officials, employees and representatives of the American Company, in operation and control of the property of the Union Company, and to re-establish over the latter company and its property the domination and control exercised by said American Company prior to the institution of this litigation, and the entering of the decrees in said causes granting the injunctions prayed and the appointing of the receivers herein, in which decrees said domination and control were declared unlawful and permanently enjoined.

(5)    That the receivers appointed by the Superior Court, purporting to act under the directions and authority of the Postmaster General, and without any order of court authorizing them so to do, are now charging and collecting, in the State of Indiana, telephone rates on intrastate telephone messages which have not been approved by the Public Service Commission of that State, in violation of the statutes of

Read v. Central Union Tel. Co., 213 Ill. App. 246.

that State, which impose heavy penalties for any vio-
lation thereof, and that the estate of the Union Com-
pany now in the hands of the receivers will be liable
to such penalties in large amounts for past violations
of said statutes, and that additional penalties will
hereafter accrue against the property of said com-
pany for future violations of said statutes.

The joint resolution of Congress of July 16, 1918,
authorized and empowered the President, during the
continuation of the present war, "Whenever he shall
deem it necessary for the national security or defense,
to supervise or to take possession and assume control
of any telegraph, telephone, marine cable, or radio
system or systems, or any part thereof, and to oper-
ate the same in such manner as may be needful or
desirable,    *    *    *    which supervision, possession,
control, or operation shall not extend beyond the date
of the proclamation by the President of the exchange
of ratifications of the treaty of peace:    Provided,
That just compensation shall be made for such super-
vision, possession, control, or operation, to be deter-
mined by the President; and if the amount thereof, so
determined by the President, is unsatisfactory to the
person entitled to receive the same, such person shall
be paid 75 per centum of the amount so determined by
the President, and shall be entitled to sue the United
States to recover such further sum as, added to said
75 per centum, will make up such amount as will be
just compensation therefor,    *    *    *:    Provided fur-
ther, That nothing in this Act shall be construed to
amend, repeal, impair, or affect existing laws or pow-
ers of the States in relation to taxation or the lawful
police regulations of the several States, except where-
in such laws, powers, or regulations may affect the
transmission of Government communications, or the
issue of stocks and bonds by such system or systems."

Acting under the authority of the resolution, the
President on July 22, 1918, issued a proclamation re-
citing the resolution, and stating further that it was

by him "deemed necessary for the national security and defense to supervise and to take possession and assume control of all telegraph and telephone systems and to operate the same in such manner as may be needful or desirable." Wherefore, the proclamation proceeded, to the effect that the President did thereby, by virtue of the powers vested in him by the resolution, and all other powers thereto him enabling, "take possession and assume control and supervision of each and every telegraph and telephone system, and every part thereof, within the jurisdiction of the United States, including all equipment thereof and appurtenances thereto whatsoever and all materials and supplies," and directed that the supervision, possession, control and operation be exercised by the Postmaster General, and that the Postmaster General might perform such duties to such extent and in such manner as he shall determine "through the owners, managers, boards of directors, receivers, officers and employes of said telegraph and telephone systems." Thereafter, on August 1, 1918, the Postmaster General, pursuant to the proclamation of the President, announced that he had taken possession and assumed control of all telegraph and telephone systems in the United States, and that it was his purpose "to coordinate and unify those services so that they may be operated as a national system with due regard to the interests of the public and the owners of the properties."

It clearly appears from the joint resolution of Congress and the proclamation of the President, that the possession, control and operation of the telegraph and telephone systems were taken over by the Government as a war measure. We think it clear that the power of the Government in the prosecution of a war (not only in the mobilization of the military forces and other immediate military necessities, but also in the mobilization and utilization of all resources of the country) is supreme, and since Congress by joint res-

olution authorized the President, whenever he deemed it necessary for the national security and defense, to take possession and control of the telegraph and telephone systems, he may do so, and in doing so he is not required to get the consent of those in whose possession these properties may be, whether they be owners, receivers or others. It is obvious that this must be true, for if it were otherwise—if it were necessary to ask the several owners or receivers in possession of property to give their consent to the turning over of these properties—the entire purpose of the resolution might be nullified, and the successful prosecution of the war prevented. The war power and all powers incident to it reside in the nation's right of self-preservation, and the means of enforcing such right are left to the discretion of the nation, and cannot be interfered with at the pleasure of the States or their courts. *United States v. Casey,* 247 Fed. 362; *Pappens v. United States,* 252 Fed. 55. On the question of the authority of the Postmaster General, in taking possession of commercial cables and cable companies, under the joint resolution of Congress and the proclamation of the President, it has been held in a learned opinion rendered by Judge Hand, in the case of *Commercial Cable Co. v. Burleson,* 255 Fed. 99, in the United States District Court, Southern District of New York, that the joint resolution of Congress and the proclamation of the President had the effect of immediately passing the possession and control of the operation of the cables to the President acting through the Postmaster General.

On the other hand, counsel for petitioners refer us to the recent opinion of Judge Kinkead in the case of *State of Ohio v. Ohio State Telephone Co.,* in the Court of Common Pleas of Franklin county, Ohio. That case involved the legality of intrastate telephone rates inaugurated by the Postmaster General, which question is in no way involved in the pending matter. Counsel for the petitioners have also cited in support

of their contention *Ex parte Milligan*, 4 Wall. (U. S.) 2; *Johnson v. Jones*, 44 Ill. 142, and a number of other cases, but in our opinion they are not in point. An examination of them discloses the fact that none of them involved the question of the power of Congress and the President to assume the possession and control of property, which is deemed necessary for the prosecution of war or to raise and support armies or use all means to enforce the power to declare war and successfully prosecute it through the mobilization of the military forces or the various national resources.

Under the resolution of Congress, the President is given the power to take possession of and control the property of telephone companies, whenever he deems such action necessary and expedient for the furtherance of the national security and defense. The question whether the conditions are such as to make such action necessary and expedient for that purpose is one which lies wholly within the discretion of the President, and the exercise of that discretion by him through his agents is not subject to injunction or other similar action of the courts. *United States ex rel. Riverside Oil Co. v. Hitchcock*, 190 U. S. 316.

The point urged, that if the joint resolution is held to authorize the taking of the property in the manner in which the Postmaster General has acted, it is unconstitutional, for the reason that it amounts to the taking of property without just compensation, cannot be maintained, for the reason that the resolution by express terms amply provides for just compensation. Nor can we agree with the contention that the action of the Postmaster General amounts to the taking of property without due process of law, for the Constitution of the United States expressly authorizes Congress to make all laws which shall be necessary and proper for carrying into execution the power to declare war, or to provide for the common defense and general welfare, which includes the power to assume possession and control of property, whenever such

action is deemed necessary for the successful prosecution of war. U. S. Constitution, art. I, sec. 8.

As to the contention that in taking over the possession and control of the Union Company, the Postmaster General is attempting to put the American Company and certain officers of that company, who have been constituted his agents in the federal control of telegraph and telephone companies under the resolution, in control of the property of the Union Company, and thus re-establish over that company and its property the domination and control which was exercised prior to the institution of this litigation and which was declared to be illegal by the decrees and perpetually enjoined therein, it should be said that the parties named cannot be considered as acting as agents of the American Company, or even in their capacity as individuals, but solely as the agents of the President of the United States under the Postmaster General, in his possession and control of this property, under the powers granted to him in the congressional resolution. Whatever is done by these agents in connection with their possession and operation of this property is done by the President, through them in their capacity as agents.

Not only has the Postmaster General, in our opinion, the power and authority to take over the possession and control of the property of the Union Company, but it is entirely proper for him, in the physical operation of that property, to act through the receivers who were in possession of the property at the time it was taken over by him, and the receivers, in carrying on the operation of the property under the control and authority of the Postmaster General, may take all such action as he may direct, connected with its operation, without any order of the court appointing them, authorizing them so to do, for in all things done by them, in connection with the operation of the property under federal control, they are not acting as

receivers but as the agents of the Postmaster General. Of course, in the fixing of the compensation to be paid by the government for the use of the property of the Union Company, the receivers, as such, must deal with the proper governmental agents.

For the reasons stated, the petition for the issuance of a writ of certiorari is denied, and it follows that the motion of the respondents to set aside the order heretofore entered, directing that a writ of prohibition issue, must be allowed, and it is so ordered.

There is a further motion pending before us in this matter which must be disposed of, namely, a motion of petitioners for leave to file a petition asking for the removal of the receivers of the Union Company and their counsel. In view of what we have already said, we feel it unnecessary to make further comment with reference to that motion, but for the reasons given, said motion is denied.

*Petition for writ of certiorari denied.*
*Motion to set aside order directing writ of prohibition allowed.*
*Motion for leave to file petition for removal of receivers and their counsel denied.*