## LYDERS v. DEL NORTE COUNTY.*
### No. 8867.

Circuit Court of Appeals, Ninth Circuit.
Jan. 11, 1939.

Harold M. Sawyer and Eric Lyders, both of San Francisco, Cal., for appellant.

T. F. Peterson and Charles Reagh, both of Eureka, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Appellant brought a suit seeking a decree declaring that Whaler Island was held by appellee in trust for him, and appeals from an adverse decree.

Crescent City Harbor is a bight on the California coast, having a length of about a mile, a width of about a half-mile, and facing south. Its western extremity is Battery Point. Whaler Island is about a half-mile south of the shore line of the harbor's eastern extremity, and is a rocky island.

Prior to 1914, some eight reports by the Chief of Engineers, Department of War, had been made regarding improvements of Crescent City Harbor, in none of which was improvement recommended. Of these reports, the first was made in 1867, and the last in 1911. The Act of July 25, 1912, § 2 (37 Stat. 201, 223, 230), made an appropriation and directed the Secretary of War to cause a preliminary examination and survey to be made of Crescent City Harbor "with a view to securing a suitable har-

*Rehearing denied Feb. 14, 1939.

bor". Pursuant thereto reports were made and are contained in House Document No. 434, 64th Congress, 1st Session.

The District Engineer, on January 31, 1914, reported to the Chief of Engineers, and recommended that the harbor be improved by the United States at a total initial cost to it of $1,578,750 "provided that an additional $250,000 be contributed toward the work by local interests". The improvements recommended were: a breakwater extending about 3,000 feet from Battery Point (the western extremity of the cove), southeasterly to Fauntleroy Rock, which is west, and a little south of Whaler Island; and a jetty or sand barrier extending from about the east extremity of the cove, southwesterly a distance of about one-half mile to Whaler Island. The entrance into the harbor would thus be between Fauntleroy Rock and Whaler Island. In the report quoted is the following from an assistant engineer's report:

"* * * It is thought that many of these rocks, including Whaler Island and Castle Rock, are still the property of the United States, and it is suggested that they be withheld from sale or other transfer from the public domain until it is determined whether or not they be needed for the development of the harbor.

"Whaler Island, Preston Island (private property), White Rock, and portions of Castle Rock would form an adequate and very cheap supply of stone for jetty construction. The material could be loaded directly on barges from the quarry pits and delivered in the work at a very low cost * * *".

On November 10, 1915, the Board of Engineers for Rivers and Harbors, reviewed the report of the District Engineer and recommended that the United States construct the breakwater from Battery Point at a cost of $490,000, on the conditions that satisfactory assurance would be given that a projected railroad from Grants Pass, Oregon, to Crescent City would be completed within a reasonable time, that local interests would contribute $100,000 toward the work and furnish "free of cost to the United States, such land as may be required for the operations of the Government in connection with this project". On December 16, 1915 the Chief of Engineers concurred in such recommendation.

In accordance with the recommendations of that report the Act of July 18,

1918 (40 Stat. 904, 910) approved the breakwater project subject to the conditions set forth in the report above mentioned, but changed the amount to be contributed by local interests to $200,000. The Act of March 2, 1919 (40 Stat. 1275, 1284) temporarily waived the condition concerning the railroad. Work began on the breakwater project in April, 1920 and continued during the summer working season each year until July 20, 1925, when the appropriation was exhausted. At that time the breakwater was 755 feet short of its contemplated length.

The Act of March 3, 1925, § 8 (43 Stat. 1186, 1191, 1196) authorized a further preliminary examination and survey. On January 26, 1926 and on November 15, 1926, the District Engineer submitted reports recommending completion of the breakwater project, at a cost according to the first report of $710,000 to the United States without contribution by local interests. On December 15, 1926, the Board of Engineers concurred in the recommendation, as did the Chief of Engineers on December 18, 1926. (See House Document No. 595, 69th Cong., 2nd Session).

On January 6, 1927, appellant was the owner of scrip, originally issued pursuant to the Act of April 5, 1872 (17 Stat. 649, 650), which permitted him to select, and obtain a patent for "unoccupied and unappropriated public lands of the United States, not mineral". Section 3. On that day he filed in the proper land office a selection of, and application to enter Whaler Island, in which he stated that "said land is essentially non-mineral land".

The Act of January 21, 1927 (44 Stat. 1010, 1014) approved completion of the breakwater project, pursuant to the Chief Engineer's report of December 18, 1926. The President, by proclamation, withdrew Whaler Island from location, entry and all forms of location, pending classification and legislation on January 28, 1927, and made a like withdrawal on February 12, 1927, in aid of legislation and in connection with the improvement of the harbor.

Various protests against allowance of appellant's selection were filed. In one it was stated that the filing of the map contained in House Document No. 434 with the Board of Engineers constituted an appropriation by the United States and that there were 100,000 tons of excellent rock on Whaler Island, which was needed for construction of the jetty extending from the shore to Whaler Island.

The Act of March 4, 1927 (44 Stat. 1845) authorized and directed the Secretary of the Interior to issue patent covering Whaler Island to appellee. The House Report accompanying the bill which became law stated that the island was "composed entirely of rock"; that stone from the top of the island would be suitable for use in jetty construction; that appellant had filed an application for selection of the island, and "The private claimant should not succeed in his application unless lawful reasons require it. The courts are open to protect the lawful right, if any, of the applicant, notwithstanding this action of Congress".

On May 17, 1927, the Commissioner of the General Land Office rejected appellant's application, on the grounds that the island in legal effect had been appropriated by the 1915 report, and that the Act of March 4, 1927 was mandatory.

While appeal from that decision was pending before the Secretary of the Interior, an official survey of the island was made. The field notes of the surveyor contain the following: "* * * The soil is very rocky and for the most part, 4th rate. However near the top there is considerable soil with loose rock on which is found a heavy growth of coarse grass. Some short brush is found on the north slope. There are no improvements on the island nor indications of mineral * * *"

On October 3, 1927, the Secretary of the Interior affirmed the decision of the Commissioner of the General Land Office, on the ground that the Act of March 4, 1927 was mandatory, and vested no discretionary power in the Secretary of the Interior. He declined to pass on the question of the superiority of right between appellant and appellee. Appellant's motion for rehearing was denied on November 10, 1927.

Thereafter, appellant brought a suit to enjoin the Secretary of the Interior from rejecting his application for selection of Whaler Island and from issuing a patent thereto to appellee. He obtained a decree in the Supreme Court of the District of Columbia, which, on November 4, 1929, was affirmed on appeal, on the ground that the Act of March 4, 1927, did not require issuance of a patent to appellee without consideration of vested rights to the island, and therefore the injunction, which en-

joined the Secretary of the Interior from taking the action complained of until appellant had "been accorded an opportunity to establish his rights", was affirmed. West v. Lyders, 59 App.D.C. 122, 36 F.2d 108, 111.

Thereafter the Secretary of the Interior again threatened to issue the patent, and appellant again brought suit to enjoin the Secretary of the Interior from rejecting his application for selection and from issuing patent to appellee. He obtained a decree in the Supreme Court of the District of Columbia, on the ground that appellant was "entitled to a hearing, as was commanded by the decree in the former case". Wilbur v. Lyders, 61 App.D.C. 202, 59 F.2d 877, 878.

After a hearing by the Register of the land office in which appellant's application for selection was filed, the Register on July 1, 1933, recommended cancellation of appellant's selection. On February 12, 1934, the Commissioner of the General Land Office approved the action of the Register. The decision of the Commissioner was affirmed by the Secretary of the Interior on September 18, 1934. The basis of his decision is shown by the following quotation of his opinion: "the Act of Congress of July 18, 1918, authorizing as it did the construction of the project recommended in House Document 434, 64th Congress, 1st Session, which project included the use of Whaler Island in the manner hereinbefore described, constituted an appropriation of Whaler Island by Congress; and since the Valentine scrip by which Lyders claims entitled him to select only unappropriated public land, his application must be rejected."

Thereafter appellant brought a suit to restrain the Secretary of the Interior from rejecting appellant's application for selection and issuing patent to appellee. The Supreme Court of the District of Columbia dismissed the bill and on April 27, 1936, the decree was affirmed. Lyders v. Ickes, 65 App.D.C. 379, 84 F.2d 232. It was there pointed out that the issue before the Register, the Commissioner and the Secretary was whether or not Whaler Island had been appropriated by the United States, and it was held (page 234 of 84 F.2d): "* * * We think that both the question of law involved in the interpretation of the statute, and the question of fact as to whether or not Whaler Island was included as a part of the improvement project, called for the exercise of the judgment and discretion of the Secretary to an extent which cannot be controlled by the courts. * * *"

A patent covering Whaler Island was issued to appellee on June 17, 1936.

Meanwhile on May 16, 1935, the Chief of Engineers made a report[1] recommending that construction of a sand barrier from Whaler Island to the shore be postponed until attempts to maintain the harbor by dredging were made.

On July 8, 1936, the bill herein was filed. Appellant alleged that Whaler Island, at the time of his selection thereof "was unsurveyed, unoccupied and unappropriated public land of the United States, not mineral in character" and prayed for a decree adjudicating that appellee held Whaler Island in trust for him. The amended answer denied that Whaler Island was unappropriated or not mineral in character at the time of appellant's selection, and alleged that the island had been appropriated prior to appellant's selection thereof, and that appellant knew the island was mineral in character.[2]

The trial court found that prior to the time appellant selected Whaler Island, the same had been appropriated by the United States, and that the island was mineral in character and known to be such by appellant. Decree was rendered for appellee, and appellant seeks review.

The question as to whether or not the United States had appropriated Whaler Island was presented to and decided by the Secretary of the Interior. The same question was again presented in Lyders v. Ickes, supra, but was not decided because

---

[1] The difficulty under consideration was that the "protected area has shoaled because of sand brought in by the action of waves and currents". Prior to that time, the Chief of Engineers had recommended that enlargement of the harbor should not be made, on January 5, 1931, and on September 30, 1933.

[2] Prior to the hearing by the court below, the Chief of Engineers, on March 25, 1937, made a report recommending construction of the sand barrier or jetty from Whaler Island to the shore at a cost of $135,000. The recommendation was approved by the Act of August 26, 1937, Ch. 832 (50 Stat. 844, 849). To January 20, 1937, $907,726.88 for new work and $256,072.68, including $245,000 contributed by local interests, had been expended.

the court there held that a decision on the question "called for the exercise of the judgment and discretion of the Secretary to an extent which cannot be controlled by the courts * * *" The question is again presented here. In Northern Pac. Ry. Co. v. McComas, 250 U.S. 387, 392, 39 S.Ct. 546, 63 L.Ed. 1049, it is said that the question as to whether or not particular lands have been "appropriated" is one of fact, and a decision on the question by the land department is conclusive. On that authority we hold that the land department's decision as to whether or not Whaler Island was appropriated, is conclusive here.

In view of this conclusion it is unnecessary to consider other points presented.

Affirmed.

STEPHENS, Circuit Judge (concurring).

I concur in the conclusion reached in the main opinion, but I do not do so solely upon the authority of Northern Pac. Ry. Co. v. McComas, 250 U.S. 387, 392, 39 S. Ct. 546, 63 L.Ed. 1049. That case was decided upon the point that property there involved was appropriated by a physical entry thereon and possession thereof taken, which is not the case here. This is definitely pointed out in Lyders v. Ickes, 1936, 65 App.D.C. 379, 84 F.2d 232, 234. The court in the last cited case states the situation just as we have it before us, and I think arrived at the correct solution. I quote from the opinion:

"The Secretary was required, in determining the issues presented, to interpret the Act of July 18, 1918 (40 Stat. 904, 910), which provides, among other things:

" 'The improvement of Crescent City Harbor is hereby authorized in accordance with the report submitted in House Document Numbered Four hundred and thirty-four, Sixty-fourth Congress, first session, and subject to the conditions set forth in said document.'

"Several reports appear in the document referred to. The Secretary was also required to determine as a question of fact whether the report referred to in House Document No. 434 embraced Whaler Island as part of the improvement project. We think that both the question of law involved in the interpretation of the statute, and the question of fact as to whether or not Whaler Island was included as a part of the improvement project, called for the exercise of the judgment and discretion of the Secretary to an extent which cannot be controlled by the courts. Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218, 219, 50 S.Ct. 320, 74 L.Ed. 809; United States ex rel. Riverside Oil Co. v. Hitchcock, 190 U.S. 316, 321, 323 et seq., 23 S.Ct. 698, 47 L.Ed. 1074."

For the same reasons I think we cannot review the Secretary of the Interior's ruling that Whaler Island had already been appropriated for another use when appellant attempted to acquire it through the use of his scrip. It follows that the Island was not then subject to location as unappropriated government land.

Affirmed.