## LEACH v. CARLISLE, Postmaster.

### (Circuit Court of Appeals, Seventh Circuit. April 27, 1920.)

### No. 2772.

1. **Post office ⊂⇒26—Fraud order not proper, where question of fraud turns on contradictory opinions.**

    It was not the design of Rev. St. §§ 3929. 4041 (Comp. St. §§ 7411, 7573), as to fraud orders, to vest the Postmaster General with authority to determine between contradictory views held in apparent good faith on a subject the merits or demerits of which may fairly be said to be a matter of opinion among those who ought to know.

2. **Post office ⊂⇒26—Fraud order against seller of sexual rejuvenator held proper.**

    Fraud order issued against one doing business as "Organo Product Company," advertising and selling a product called "Organo Tablets" as a remedy for sexual weakness, *held* proper; the advertising employed making extravagant and unfounded claims.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by Fred Leach, doing business as the Organo Product Company, against William B. Carlisle, Postmaster. From decree for defendant, plaintiff appeals. Affirmed.

Appellant, Fred Leach, under the name of "Packers' Product Company," was engaged at Chicago in the business of selling an alleged remedy for sexual weakness and disorders in men, which he called "Orchic Extract," consisting of dried and powdered sheep's testicles made into tablet form, and was advertised, sold, and remitted for through the United States mails. In 1917 he was called upon by the Postmaster General to show cause why a fraud order should not be issued against Packers' Product Company for conducting a scheme for obtaining money through the mails by false and fraudulent pretenses, etc., contrary to sections 3929 and 4041 of the Revised Statutes as amended (Comp. St. §§ 7411, 7573).[1] A hearing was had, and on April 4,

---

[1] "Sec. 3929. The Postmaster General may, upon evidence satisfactory to him that any person or company is conducting any * * * scheme or device for obtaining money or property of any kind through the mails by means

1918, the fraud order issued. Thereupon Leach filed a bill to restrain the postmaster at Chicago from holding and returning mail pursuant to the order. Upon the hearing of that cause, the District Court denied the injunction and dismissed the bill. Thereupon Leach abandoned the name "Packers' Product Company," and adopted that of "Organo Product Company," and made some changes in his advertising matter, and began marketing the same product, calling it "Organo Tablets," transacting the business through the mails as before.

Proceedings were instituted to have this use of the mails declared a scheme to defraud under the statutes, and for a supplemental fraud order as to mail of Organo Products Company. Another hearing was had, in which there was a full presentation of the issues. The ground covered by the former hearing was again gone over, but far more elaborately. The Postmaster General found that this was a scheme to defraud by use of the mails, and supplemental fraud order was issued accordingly. Thereupon the bill in chancery herein was filed, wherein it is alleged that the product in question is one of great merit as a remedy for such ills, that plaintiff practiced no fraud, and did not use the mails to that end, and asking that the postmaster at Chicago be restrained from holding and disposing of the mail as prescribed in the fraud order. The bill set forth a transcript of all the proceedings (including the evidence) before the Postmaster General, and a statement of what transpired in the District Court in the first suit there. Leach moved for a temporary injunction, and the government for a dismissal of the bill for want of equity appearing on its face. The court denied the injunction and dismissed the bill, and Leach brings this appeal.

Lee D. Mathias, of Chicago, Ill., for appellant.

Charles F. Clyne, John A. Nash and James R. Glass, all of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). The question which this record presents is whether, upon the facts before him, the Postmaster General was legally warranted in the exercise of the large discretion which in such matters the statutes repose in him, through making the order complained of.

The issue which was there most warmly contested was that of the

---

of false or fraudulent pretenses, representations, or promises, instruct postmasters at any post office at which registered letters arrive directed to any such person or company, * * * to return all such registered letters to the postmaster at the office at which they were originally mailed, with the word 'Fraudulent' plainly written or stamped upon the outside thereof; and all such letters so returned to such postmasters shall be by them returned to the writers thereof, under such regulations as the Postmaster General may prescribe. * * * "
(Act Sept. 19, 1890, c. 908, § 2, amended.)

(Act March 2, 1895.) "The powers conferred upon the Postmaster General by the statute of eighteen hundred and ninety, chapter nine hundred and eight, section two, are hereby extended and made applicable to all letters or other matter sent by mail." Comp. St. § 7412.

"Sec. 4041. The Postmaster General may, upon evidence satisfactory to him that any person or company is engaged in conducting any * * * scheme for obtaining money or property of any kind through the mails by means of false or fraudulent pretenses, representations, or promises, forbid the payment by any postmaster to said person or company of any postal money orders drawn to his or its order, or in his or its favor, * * * and may provide by regulation for the return to the remitters of the sums named in such money orders. * * * "

merit of animal testicular substances as a remedy for sexual and nervous disorders. Much evidence was adduced upon this, and many authorities cited, pro and con. By many it is maintained that they are utterly without merit, particularly when administered by the mouth, as this is, and not hypodermically, as is often the case; and it was contended for the government that such remedies in general, and particularly when so administered, are so manifestly wanting in merit that any representations to the contrary are essentially fraudulent. On the other hand, it was contended, and some evidence tended to show, that such substances, administered as this is, have proved more or less beneficial in some of such ailments.

Search for some clime or condition or spring or substance which would arrest human decay, and restore manly strength and vigor, is coeval with love of life and strength, and dread of decay and death. Whether wholly or partly predicated on superstition, or fact, or both, the thought is as old as the hills that to partake by way of food or otherwise of certain parts of animals will produce beneficial effect in the corresponding part in man—the brain, the heart, the stomach, and notably the testicles. There has long been more or less prevalent the practice of resorting to the testicles of animals as an article of food or medication for prolonging, restoring, or augmenting manly strength and sexual power. Among some it is believed that the lion, the tiger, the bull, and other animals of great strength are the most efficacious in this regard. The ram also has had favorable mention. In recent years scientific investigations have been conducted, with more or less beneficial result, respecting the employment of animal substances in the treatment of human ailments. Pepsin from stomachs is employed to treat some stomach troubles in persons, extracts from animal thyroid glands are used for human thyroid ailments, and other instances might be cited. Some decades since Dr. Brown-Sequard, a noted French neurologist, conducted a series of experiments on himself with hypodermic administration of animal testicular lymph, as to which he reported a very considerable degree of success; and his writings on the subject gave impetus to further experiments, and the use of such preparations in the treatment of sexual disorders and shortcomings.

[1] Considerable literature is extant upon the subject, and it appears that some physicians employ such remedies, and that many others decry their use. For some time back such substances have been made in considerable quantities, and the very testicular product in question is made and sold at least by one of the large packers, and by a number of the extensive manufacturers here and abroad, to supply any public demand for it. Under the record facts the most that could be said is that doctors and others, who might reasonably be supposed to possess expert knowledge upon the subject, disagree as to whether or not such substances have any remedial virtue.

It was not the design of these statutes to vest the Postmaster General with authority to determine between contradictory views held in apparent good faith upon a subject the merits or demerits of which may fairly be said to be a matter of opinion among those who ought

to know. American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 Sup. Ct. 33, 47 L. Ed. 90. It would follow that, if the order herein is sustainable only upon the inefficacy and absolute want of remedial virtue of the substance which appellant sells, the injunction should have issued.

[2] But any so-called remedy, however meritorious, may in its exploitation become the subject-matter of fraud. Indeed, it is too often seen that articles to which more or less merit is popularly ascribed are made a basis or vehicle to carry the grossest frauds, serving only to lend semblance of good faith to the scheme.

That modesty, or prudery, or whatever else it may be called, which puts a ban on frank and unrestricted reference to human sexual parts, and enfolds their mention and consideration in secrecy and shame, has given quacks and charlatans a most fruitful field for operation, of which they have not been slow to take advantage. Sometimes boldly, but often by suggestion and innuendo, they undertake to make all men believe they have symptoms of most serious sexual disorders, when, in truth, they are more often perfectly normal, and that the natural subsidence of virility (which is generally quite as certain as the flight of years) will be arrested, and the victim restored to the vigor of robust youth, and that all sexual troubles will be corrected, if only that particular nostrum be taken, or that plan persistently followed. He who would operate in this peculiar field of endeavor must have a special care that his scheme is not calculated to instill in men unfounded fears, or inspire in them false hopes, as a means to the end of obtaining their money.

The plan for publicity for such remedies usually comprises literature which treats entertainingly, if not always scientifically or even truthfully, of the sexual parts, points out symptoms and dangers, and has somethings to say of premature decay, loss of power, etc. And then the proposed remedy, which is given some high-sounding name, but which is usually some ordinary and easily obtainable substance, is invitingly put forth as a certain cure for conditions which in most instances require no treatment, and in most others are beyond it. There is ordinarily a warning against quacks and cheats (who are intimated to be all the other workers in the same vineyard), and there is the quite unexceptional accompaniment of glowing testimonials from grateful users.

Careful perusal of the literature put out by appellant to effect the sale of his tablets induces the conclusion that it does not differ materially from the old-time stuff. It is perhaps somewhat more carefully composed, with the evident purpose of avoiding some of the more glaring misrepresentations present in that which brought about the first fraud order. But the general purport is the same.

It consists in the main of a quite lengthy introductory letter, inclosing a closely printed 20-page booklet. The letter expresses the belief of "Organo Products Company" that they offer "the very best method and remedy for regaining lost sexual power." The reader is then informed that the alluring advertisements of others who offer treatment for such ailments are intended to make every one who reads them fear-

ful of his condition. The intent is evidently to impress the reader with the complete absence of such intent on the part of this concern; the psychological effect of which apparent frankness being probably the more greatly to impress the reader with the startling statements thereafter made. It is further said in the letter that after middle age the sexual powers gradually decline, but in the booklet it is stated that "nature intended man to retain all his powers and faculties unimpaired to an advanced age." The letter then discusses somewhat sexual weaknesses, with another assertion of honest belief that "Organo tablets" will do more than any other remedy to effect a cure. A short disquisition follows on the use of extracts from animal glands as human remedies, particularly the thyroid glands, of which probably the public has more or less general information, and then it is asserted that "Organo tablets are based on the same theory or scientific principle." The letter closes with a request to read the booklet, and the suggestion that the reader "waste no further experiments, but order a course of our treatment, and we give every assurance that you will be more than pleased with its results."

The outside front cover of the booklet is occupied with the large-type legend, "Are You 100% Efficient? The present time requires energy and endurance," and inside this cover page the reader is warned in black-faced letters that:

"To be ambitious and Succeed in Life, your Nervous System must be Well and Strong, your Blood must be full of Vigor and Vitality. You must have a Bright Mind and Full Control of all your Faculties. But if you are Discouraged, Gloomy, Irritable and have a worn out Nervous System, then, each day only adds to your Misery."

The object of the booklet is stated to be to "explain to men of mature age a treatise of a private nature, which we believe will be of interest to you, even though you may not at the present time be in need of same." This introduction is of course calculated to induce those who have read thus far, eagerly to peruse the rest of it. It is arranged under attractive, large-type headings, such as "Neurasthenia," "Organotherapy," "The gauge which most accurately marks presenility or premature old age," "Prove to yourself what the blood can do," "What a wonderful sensation," "Physical decline—its causes and consequences—no man is exempt," "Appearance no indication of health and manly power," "Any man is liable to be weak," "Do not let false pride stop you from being cured," "First law of nature," "Sexual power is seldom lost," "Relation of nerves to bodily functions," "Organo tablets supply missing elements," "Organo tablets a logical remedy," "Work with nature's laws," "What manly strength is," "Reserve nerve force," concluding with the admonition, "Be fair with yourself," under which last head the reader is urged to frankly ask himself, "Do I need it?" and is solemnly adjured not to "overestimate" his condition, but to give himself "the benefit of what Organo tablets can accomplish" as "a powerful aid to the nutrition of the organs," followed by the usual assurance that it contains no "mineral or poisonous products," and that it "fully agrees and lives up to the latest Pure Food and Drug Act," again assuring the reader that this is "no fake

267 F.—5

medical company, no C. O. D. scheme, no fake guaranties, no free trial treatments, no frauds or humbugs in any form"; and in other parts caution is urged against "patent medicines, no cure no pay, electrical belts and appliances, etc.," although the evidence discloses that some years before a similar order was lodged against Leach for exploiting a glass vacuum developer of male sexual parts. Under each of these subject heads there is duly presented a detailed and amplified discussion of the proposition stated.

In order to attest the excellence of testicular extracts, it is asserted that it "is being recommended and prescribed by leading physicians throughout the civilized world"; but to convince the reader that, aside from physicians, he must resort to appellant alone to obtain this "nature's wonderful remedy," it is stated that it is "not regularly on the market," and would have it inferred that these tablets have ingredients and qualities peculiar to themselves, and that appellant alone can supply them, in stating that "Organo tablets are prepared in accordance with our orders," and again, "We tell you frankly that this product and wonderful remedy is being compounded for us in one of the largest and best laboratories of the world," etc.; the fact being that it is a product which this manufacturing concern (and others as well) prepares, in nowise different in ingredients and qualities than are these tablets, and sells them to all comers, just as it would make and sell quinine capsules, pepsin tablets, and other preparations, infinite in variety, and having much or little merit, for which there may be demand.

But, whatever may be the remedial merit of testicular substances, their most ardent partisans do not begin to justify the extravagant and·· unfounded claims which the booklet makes, among these:

"Presenility or premature old age * * * can in most cases be relieved or deferred by careful or conscientious treatment with Organo tablets."

"If everything on earth has failed you, a short trial of Organo tablets will show you results which should more than repay you for the small investment required. Do not wait till it is too late. We will help you, if you believe in a good common-sense method and honest treatment."

"We cannot look into our bodies and see the organs work; therefore at times it is even difficult to apply the correct treatment, unless it be a logical remedy, such as Organo tablets."

"When he finds that nature must have assistance, he will use a full course of Organo tablets and store up a reserve fund of nerve force."

"Organo tablets are a reliable preparation for building up wasted organs and low vitality."

"Its general action is that of a powerful rebuilder and rejuvenator."

"The timely use of organo tablets for a reasonable length of time seldom fails in invigorating the functions of the body, bringing about tissue repair, so that those parts that are weak are strengthened and restored to their normal condition."

"There are in America to-day millions of men between 17 and 65 years of age who are earnestly seeking relief from sexual weakness in some form or stage."

"Every year hundreds of thousands are added to the already long list of men who suffer from lack of manly strength."

"A powerful nerve-building, strength-giving tonic and invigorating treatment, such as Organo Tablets, is needed to assist lagging energy, strengthen the nerves that control the sexual organs, and bring back to normal strength those organs that are weak."

"Testicular extract is prescribed by leading physicians throughout the civilized world for Nervous Weakness, General Debility, Sexual Decline or Weakened Manhood, Urinary Disorders, Lame Back, Lack of ambition, energy and nerve force, Sleeplessness, and Run Down System."

"Organo Tablets are not an experiment, * * * are a reliable preparation for building up wasted organs and low vitality; increases the 'stamina,' the staying power, the responsive nerve force, that makes you capable of enjoying life; invigorates man's virile strength; a reliable treatment for all Nervous Affections, Nervous Debility, Physical Weaknesses, and Functional Disorders."

The record does not warrant the conclusion that even appellant believed such broad assertions, nor that he was a physician or a scientist, or had conducted experiments or investigations; and it does not appear that he had basis for any belief whatever on the subject. The assertion of special and peculiar merit for "organo tablets" over and above, testicular products by any other name or style is wholly without basis in fact. In this particular field, with its narrow limitations, and its possibilities at best involved in uncertainty and doubt, there would be manifest difficulty in preparing advertising matter which avoids grossly extravagant and unwarranted representations. But this very difficulty, far from justifying such departure, would impose on those who glean in it, and would extract profit out of the exploitation of such articles, special care to see that what is so put forth is not calculated to deceive and defraud the public.

We are of opinion that this record, not only fails to show that the Postmaster General had no warrant in law for his order, but that, on the contrary, it shows there was abundant ground for it.

The decree of the District Court is affirmed.