WHITE STAR BUS LINE, INC., Plaintiff and Appellant, *v.* ROBERTO A. SÁNCHEZ, ACTING COMMISSIONER OF THE INTERIOR, Defendant and Appellee.

No. 8464. Argued December 15, 1941.—Decided January 23, 1942.

*C. Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for appellant. *George A. Malcolm, Attorney General,* and *E. Franco Cabrero, Deputy Attorney General,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On October 17th last, the White Star Bus Line, Inc., a domestic corporation engaged in the transportation of passengers within the municipalities of San Juan and Río Piedras, under a franchise granted to it in 1927, applied to the District Court of San Juan for a permanent writ of injunction to restrain the Commissioner of the Interior from removing the number-plates of each and all of the busses owned by the plaintiff and used by it in the operation of its business.

The facts on which it based its application are substantially as follows: The plaintiff owns and operates 225 busses known as *guaguas* for the transportation of passengers between San Juan and Río Piedras. Act No. 75 of 1916 (Session Laws, p. 140), as amended, requires all public carriers to pay annually certain fees for licenses and number-plates, which number-plates must be fastened in a visible place on each vehicle before the same can be operated publicly.

In order to comply with the last amendment of the act made during the year 1941–42, the plaintiff inquired from the Commissioner of the Interior of Puerto Rico how much should it pay in order to obtain its number-plates, and in accordance with the answer which it received prior to July 20, 1941, it paid to the commissioner $6,750 for its 225 busses, and the commissioner delivered to it the corresponding number-plates which were placed on the vehicles, which continued to be operated.

At this stage, the commissioner, on September 5, 1941, reconsidered his opinion in the sense that, under the amendment of the act, there must be paid an additional fee of $25 on each vehicle, and he so advised the plaintiff, who entered into some negotiations with him as a result of which that officer agreed to suspend the collection of the fees, upon the furnishing of a bond, until the matter had been determined by the courts.

In spite of that, the commissioner disregarded the agreement and on October 16, 1941, wrote to the plaintiff requesting it to pay unconditionally and fully the difference, granting it a term therefor, and threatening it with the removal of the number-plates from its busses in case of default in such payment.

The plaintiff maintained that such conduct on the part of the commissioner was arbitrary and unauthorized by law, and requested that the court grant speedily the relief above stated.

The Commissioner of the Interior answered each and every averment of the complaint, and explained its position in the sense that upon becoming aware of the mistake which he had made when he first advised the plaintiff, he made demand upon it for the payment of the amount which it should satisfy in accordance with the law—$55 instead of $30 on each vehicle—and had various conferences with its representatives; and that, as they were unable to reach an agreement, he allowed it one day for paying the fees and cautioned it that, in default of such payment, he would remove the number-plates.

The case went to trial and the court decided it on November 3, 1941, by a judgment, setting aside the restraining order which it had issued, cancelling the bond that had been furnished to obtain the same, and finally dismissing the complaint, with costs but without including attorney's fees.

The plaintiff took an appeal from that judgment to this court and on November 5, 1941, applied to this court for the issuance of an injunction in aid of its jurisdiction in order to prevent the taking of said arbitrary action before the case had been decided on the merits, inasmuch as the Commissioner of the Interior, in view of the judgment of the district court, and notwithstanding the taking of the appeal, had made a new demand upon it requesting that the payment be made not later than noon of November 5, and threatened to

remove the number-plates from the busses in default of such payment.

In view of the urgency of the case, and as there was involved the execution of an order which might hinder to a large extent the maintainance of a public service, this court, after requiring the furnishing of full security for the payment of the entire amount claimed, ordered that a rule be issued directed to the commissioner requiring him to appear within five days and show cause why the injunction requested should not be issued, meantime being subject to a restraining order.

The required bond was furnished and the order issued. The commissioner filed an answer to the rule to show cause and both parties were fully heard and the court decided to continue the restraining order in force, conditioned upon the filing, on or before December 1, 1941, of the transcript in the injunction proceedings sought to be reviewed, together with the brief of the appellant, in order that the hearing of the appeal could be held, as it in fact was held, on the 15th of said month for which it was set.

The whole case is, therefore, now before us.

██ In the opinion of the district court which served as a basis for the judgment appealed from, there was overlooked the true question involved which is confined to a determination of whether or not the Commissioner of the Interior could by himself or through his agents remove the number-plates from the busses which carry the same by virtue of the payment of the amount that he himself stated at first should be paid in accordance with the law. We shall confine our study to that single question.

Subdivision (*h*) of Section 3 of Act No. 75 of 1916 as amended by Act No. 9 of 1926 (Session Laws (2), p. 22) provides as follows:

"Section 3.—(*h*) The Commissioner of the Interior may suspend or cancel the license, and order confiscation of the number-plates, of any motor vehicle engaged in the public service when such

license and number-plates were obtained solely for private service; and he may cancel the license of any motor vehicle engaged in the public service when, in his judgment, the automobile is operating under such conditions as to constitute a menace to the public safety.''

That is the only legal authority invoked by the commissioner to justify the action which he indicated he would take in the event that the plaintiff failed to make the payment. Is it sufficient? Let us see.

Only in two cases can the commissioner order the seizure of the number-plates of a public carrier, to wit: (1) when after the same have been obtained for private service, the vehicle is engaged in the public service, and (2) when the vehicle is operated under such conditions as to constitute a menace to the public safety.

The case at bar is not within the letter of that authorization. It is so admitted by the commissioner himself; but he maintains that as the spirit of the authorization in the first case is the prevention of fraud, the same should be extended to the instant case wherein a similar purpose is sought.

We do not agree. The authorization must be strictly construed. It was granted for specific cases and is not subject to extension. Besides, there was no deceit involved in the action of the plaintiff. It did not apply for a license costing less in order to deceitfully engaged in a business which required a more expensive one, to the prejudice of the public treasury. It acted openly and paid what it was told it should pay, and in virtue of such payment the number-plates were delivered and it placed them on its busses.

■ It is insisted, however, that this is not a proper case for injunction because the act itself which authorizes the remedy—an Act to define injunctions . . . Laws of 1906, p. 86—expressly provides that the writ can not be issued, among other cases, ''to prevent the execution of a public statute by officers of the law, for the public benefit.''

Such is, indeed, the law; but that does not mean that where the officer attempts to enforce the statute in a way which is not authorized by law, injunction does not lie to restrain his action.

As was said in the opinion of the Supreme Court of the United States, which was delivered by Mr. Justice Peckham, in the case of *American School of Magnetic Healing* · v. *McAnnulty,* 187 U. S. 94, 108:

"That the conduct of the Post Office is a part of the administrative department of the government is entirely true, but that does not necessarily and always oust the courts of jurisdiction to grant relief to a party aggrieved by any action by the head or one of the subordinate officials of that department which is unauthorized by the statute under which he assumes to act. The acts of all its officers must be justified by some law, and in case an official violates the law to the injury of an individual the courts generally have jurisdiction to grant relief."

And as was held by the Supreme Court of North Dakota construing a statute similar to ours, in the case of *State ex rel. Ladd* v. *District Court,* 15 L.R.A. (N. S.) 331, 334:

". . . The ground which underlies the relator's demurrer interposed in the district court, and his application for the writ in this court, is that the courts of this state have no authority to entertain an action having for its purpose the enjoining of a public official while executing, or c'aiming to execute, a public statute for the public benefit. He construes paragraph 4, sec. 6631, Rev. Codes 1905, as a prohibition upon courts from entertaining suits of this kind. That statute is as follows: 'An injunction cannot be granted . . . (4) to prevent the execution of a public statute by officers of the law for the public benefit . . .' We do not so construe this provision of the Code. Rather, we construe it to mean that, when a suit is tried wherein it is sought to enjoin an officer from executing a statute, he shall not be enjoined when found to be regularly and lawfully executing the statute for the public benefit. If acting in excess of, or without, authority, he is not executing a public statute. There must be some method to protect people and property against the unlawful execution of statutes by public officials; and we think

the provision referred to was not intended to preclude an inquiry on the part of courts in a suit to enjoin as to the legality of official acts.''

The judgment appealed from must be reversed and another rendered instead directing the issuance of a writ of injunction restraining the Commissioner of the Interior from removing by himself or through his agents or employees the number-plates from each of the busses of the plaintiff, without such decision implying that said officer has not the right to demand from the plaintiff payment of the total amount which, as he claims, is prescribed by the statute, by suit, if necessary, with legal costs but without including attorney's fees.

Mr. Justice Snyder took no part in the decision of this case.